## W. F. ROBERTSON v. GEO. T. COATES ET AL.

(Case No. 1805)

1. PARTIES — PRACTICE — MORTGAGE — FORECLOSURE — REVIVAL — INNOCENT PURCHAS-
ERS — GUARDIAN.— The guardian of a ward mortgaged the land in controversy to the sureties on his bond to indemnify them against loss, reserving the right to dispose of the land for "the best price and upon such terms as he might see proper." Later on he gave the guardian who succeeded him a general power to sell the land. The second guardian recovered a judgment against the first guardian and his sureties, and had a decree foreclosing the mortgage. He then sold the land under his power of attorney from the first guardian to the parties under whom defendants claimed. The heirs of the ward brought suit to revive the judgment and to cancel denfendant's deeds. The judgment was revived and the heirs of the ward bought under it. The mortgage had been recorded, but the original judgment, foreclosing

it, had not been at the time of the sale to the parties under whom defendants claimed. *Held:*

(1) That if the original defendant was dead, his vendees, claiming in subordination to the original judgment lien, should have been made defendants in a *scire facias* brought to revive that judgment. (Schmeltz *v.* Garey, 49 Tex., 49.)

(2) If he was not dead, the weight of authority is that they were not necessary parties. (Freeman on Ex., sec. 87, etc.)

(3) A revival of the judgment cut off only such rights as accrued prior to the rendition of the original judgment, and did not interfere with rights subsequently acquired, since the holders of these rights were not before the court.

(4) The court could not correctly charge the jury that since the rights of the defendants had not been adjudicated in the *scire facias* suit, the plaintiffs could not maintain an independent action against them.

(5) The title of defendants did not depend upon the failure to record the original judgment, but upon the authority of the second guardian to make the sale when he did.

(6) The original judgment of foreclosure cancelled the right to sell reserved to the mortgagor, and any subsequent sale by him was invalid as against the mortgagees.

(7) After the judgment of foreclosure the second guardian could have sold the land, subject to the lien, under his power of attorney from the first guardian, or could have had it sold under the decree of foreclosure.

(8) All of his transactions in reference to the lands occurred under and by virtue of his guardianship, and any sales made by him after the death of his ward conveyed no title.

(9) The general right to sell subject to the lien, which mortgagors possess, unless restrained by the terms of the mortgage, is not a personal trust, and there is no legal obligation resting upon them, without an agreement to that effect, to apply the proceeds of sales to the payment of the mortgage debt.

(10) A legal obligation vested in the second guardian, however, though he sold under a power from the first guardian, to apply the purchase money to the benefit of his ward. If he failed to do so the recourse was upon him and not his vendees.

APPEAL from McLennan. Tried below before the Hon. B. W. Rimes.

Plaintiff and defendants claimed title to the land under Felix W. Robertson as a common source. Felix W. Robertson was the guardian of a minor, and in anticipation of a possible delinquency, which had not then occurred, mortgaged the land in controversy to his sureties to indemnify them against loss. This mortgage was recorded in McLennan county on August 23, 1859, being executed August 23, 1858. By the terms of the mortgage the right was reserved to the mortgagor to sell and dispose of the land for "the best price and upon such terms as he may see proper."

In September, 1859, F. W. Robertson gave to D. H. Love, guardian of the minor F. F. Robertson, a general power to sell said land.

In October, 1860, D. H. Love, guardian of the minor, recovered a judgment against Felix W. Robertson and his sureties for debt, and had a decree foreclosing the mortgage.

It did not appear from the evidence that any execution was ever issued on the judgment of 1860.

In 1862-3 D. H. Love, as attorney for Robertson, being then guardian of the minor, sold the land in controversy to the defendants Burleson and to Wheeler and Owens, and received the purchase money. All the other defendants claimed under these parties, some by deeds prior and some subsequent to 1874.

Both D. H. Love and his ward, F. F. Robertson, died prior to 1873; the latter casting his estate on his wife Alice and his minor son, Wm. F., plaintiff here, who, in 1873, filed a petition in the District Court of Washington county to revive the judgment. In this petition they set out the deeds to Burleson and Wheeler and Owens, and by the former to his vendees, Allen, Fry and others, and asked that the same be cancelled and declared void. These parties were all made defendants.

Burleson and his vendees, Fry and Allen, and Wheeler and Owens, demurred to the petition on the ground that it showed no cause of action, and afterward specially excepted that the court had no jurisdiction, and for misjoinder. The demurrers of these defendants were sustained and they were discharged, and plaintiffs excepted and gave notice of appeal, which was never prosecuted. Prior to this suit Wheeler, by warranty deed to defendant Coates, conveyed to him an undivided half of land sold to Wheeler and Owens, which was duly recorded in 1872. Coates was not made a party to the suit in Washington county, nor were certain vendees of Burleson, to whom he had previously sold small tracts. The deeds of all defendants to the suit in Washington county, and their vendees, before and after the judgment of 1874, were duly recorded. Those made before the suit to revive, were before that suit duly recorded, except that to Wheeler and Owens.

A judgment was rendered in 1874, after discharging said defendants, against the mortgagee and original defendant and others, reviving the judgment. Plaintiff, a minor, became a purchaser under a sale made under that judgment in 1876, and thereupon brought this suit.

*A. W. Terrell*, for appellant, on the application of the purchase money, cited : 2 Story Eq., 1127, 1132 ; Clyde *v.* Simpson, 4 Ohio, St., 463 ; St. Mary's Church *v.* Stockton, 8 N. J. Eq., 531 ; Watkins *v.* Edwards, 23 Tex., 447 ; Willis *v.* Johnson, 38 Tex., 303.

As to personal trust, he cited : Pendall *v.* Rench, 4 M'Lean, 260 ; Hawley *v.* James, 5 Paige, 487 ; Perry on Trusts, 287, 408 ; S ith *v.* Sublett, 28 Tex., 169 ; Lyon *v.* Jerome, 26 Wend., 494.

Opinion of the court.

As to the power being merged and revoked by the judgment, he cited: Freeman on Judg., sec. 215, et seq.; Wayman v. Cochrane, 35 Ill., 152; Speed's Executors v. Hahn, 15 Am. Dec., and note, p. 81; 7 Wait's Act. and Def., 323.

On notice, etc., he cited: Pas. Dig. Laws, 4710, 4983, 4994, 5006; Hart's Dig., 667; Wright v. Lancaster, 48 Tex., 256, 257; 3 Wait's Act. and Def., 452; Farrar v. Payne, 73 Ill., 88; 2 Jones' Mort., 936; Riley v. McCord, 21 Mo., 287; Evansville Gas Light Co. v. State, 73 Ind., 222; Hendershott v. Ping, 24 Iowa, 136; Helmbold v. Mann, 4 Whart., Pa., 423; Priest v. Wheelock, 58 Ill., 114.

*Herring & Kelly, Clark & Dyer,* and *Alexander & Winter,* for appellees, cited : The People v. Beebe, 1 Barb., 379 ; Gage v. Brewster, 31 N. Y., 226 ; Statute of 1860, P. D., 3963 ; Statute of 1866, P. D., 7005 ; Deutsch v. Allen, 57 Tex., 89 ; Barron v. Thompson 54 Tex., 235 ; Bassett v. Prœtzell, 53 Tex., 569 ; Freeman on Ex., 1, 3 ; Freeman on Judg., Sec. 206 ; Byler v. Johnson, 45 Tex., 518; Sample v. Irwin, 45 Tex., 574 ; Chapman v. Lacour, 25 Tex., 94 ; Buchanan v. Munroe, 22 Tex., 542; Rorer on Jud. Sales, secs. 176, 199, 382; Freeman on Judg., secs. 162, 201; 20 Tex., 579 ; 13 Tex., 123; Freeman on Judg., secs. 249–57, 260 ; Judgment on demurrer is on merits : Freeman on Judg., 267.

WILLIE, CHIEF JUSTICE.—We are asked to reconsider the judgment rendered on this appeal at the last Austin term of this court, upon a report of the commissioners of appeals, to whom the cause had been referred.

The opinion of the commissioners was based upon one ground only, which was this : The mortgage from F. W. Robertson to the sureties upon his bond as guardian, having reserved to him the right to sell the land in controversy, and that mortgage having been recorded in McLennan county prior to the time appellees, or those under whom they claim, purchased from Robertson, through his attorney, Love, and the subsequent judgment foreclosing the mortgage not being of record at the time, the parties buying from Love were innocent purchasers for value, and their title could not be disturbed at the suit of a purchaser at the foreclosure sale.

This was not the ground upon which the jury found for the appellees in the court below, as is apparent from the only charge given them by the court. That charge is to the effect that if the appellees, or those under whom they claim, were not parties to a *scire facias* sued out to revive the judgment foreclosing the mortgage, or were dismissed from that suit upon demurrer, the plaintiff below could not recover.

The opinion of the commissioners did not determine whether this charge was correct or not, but held that the defendants were entitled to judgment upon the ground already stated. We think the charge was wrong. This court has recognized the doctrine announced by the courts of some other states of the Union, that when the defendant in the original suit is dead, his vendors, claiming in subordination to the lien of the original judgment, must be made defendant to a *scire facias* suit, brought to revive it. Schmeltz *v.* Garey, 49 Tex., 49.

It has never held, however, that such subordinate claimants were necessary parties when the defendant to the original suit was still alive. The great weight of authority seems to be that they are not.

Freeman on Ex., sec. 87; Righter *v.* Rittenhouse, 3 Rawle, 277; Morton *v.* Croghlan, 20 Johns., 106; Lusk *v.* Davidson, 3 Pen. & W., 229.

The case is different from that of an original suit to foreclose a mortgage. There the holder of the equity of redemption must be made a party in order to bar his equity. Mills *v.* Traylor, 30 Tex., 7; Hall *v.* Hall, 11 Tex., 547; Webb *v.* Maxan, Id., 678. This had been done in the original judgment of foreclosure sought to be revived, all persons interested in the land having been made parties to the suit in which it was obtained. At the time that judgment was rendered, the persons under whom appellees claim had not become connected with the land in any manner whatever. Such rights as they acquired accrued subsequently to the judgment of foreclosure, and must be adjudicated, as we shall show hereafter, upon the theory that this judgment was valid in every respect. The main object of the *scire facias* suit was to revive that judgment and give it all the force and effect it possessed at the date of its rendition. A revival of the judgment would cut off only such rights as existed prior to the rendition of the original judgment. It would not, unless under special allegations for that purpose, interfere with rights subsequently acquired. There were allegations in the petition for *scire facias* which would have put in issue the rights of the purchasers from Love, had they been before the court, and these allegations had been proved. But the petition was perfect for the purpose of reviving the judgment against the defendants to the original suit; and the case having proceeded regularly against them alone, the judgment was revived without prejudice to the rights of the purchasers from Love, under whom the appellees claim.

The question as to the validity of the title acquired by them from Love was left open, and it was to determine that question that the present suit was brought.

In view of the principles above announced, the court could not cor-

rectly charge the jury that, inasmuch as the rights of the appellees. had not been adjudicated in the *scire facias* suit, the plaintiffs below could not maintain this action.

The title of the appellees in our opinion does not depend upon the failure to record the original judgment of foreclosure in McLennan county, as held by the commissioners.

It does depend upon the authority of Love to make the sales at the time he sold the land to the persons under whom the appellees claim.

The mortgage executed by Robertson reserved to him the privilege of selling any or all the tracts of land mentioned in the instrument, for the best price, and upon such terms as he might see proper, the proceeds to be appropriated to the payment and extinguishment of his own and his sureties' liabilities on his bond as guardian of F. F. Robertson, and not otherwise.

This, the appellant contends, was the reservation of a trust in Robertson, which was meant by the parties to the instrument to be personal, and not to be exercised through an agent. It is further contended that any one purchasing under this reserved right to sell, was bound to see that the purchase money was applied as provided therein. These positions are not noticed in the opinion of the commissioners. They seem reasonable, and might have great weight in determining the cause if the appellee's title depended upon the reservation alone, and the appellants were in a situation to complain of the manner in which the trust had been executed and the purchase money applied. Robertson gave a power of attorney to Love, authorizing him to sell and to convey the lands; but before any sales were made by Love, he brought the suit in which the mortgage was foreclosed. We think that the judgment of foreclosure in that suit revoked and cancelled the right reserved to Robertson in the mortgage, and that any subsequent sales by him would not have been valid as against the mortgagees, his sureties upon the bond. But they are not complaining in this suit, and the only question is: Were the sales under the power to Love good, as against the latter, in his capacity as guardian, notwithstanding the judgment of foreclosure? This question can be solved by ascertaining what power over the land Robertson possessed. after the mortgage was executed, independent of the reservation. He had the power that every mortgagee possesses, of selling the lands subject to the lien created by the instrument. This power he conferred upon Love by the letter of attorney executed to him. When the mortgage was foreclosed, at the suit of Love, and the reservation cancelled, he held, united in himself, as guardian of F. F. Robertson, all the right to sell which F. W. Robertson's power of attorney could

give him, and also the privilege of having the land sold under the decree of foreclosure and in satisfaction of it. Between these two methods of converting the land into money he could choose; and by either he could convey a good title to a purchaser.

His right as plaintiff in the foreclosure judgment was all the obstacle in the way of Robertson's making a good title to the land; his directions to the proper officers were all that was necessary to bring about a sale of the land under that judgment.

Between these two methods of converting the land into money, he chose the former, and under the power of attorney, sold it to the parties through whom the appellees claim. All of his transactions, however, in reference to the land, occurred under and by virtue of his guardianship of the minor, F. F. Robertson ; and all his powers as guardian ceased with the death of his ward. Hence, any sales that may have been made by him subsequent to that death, conferred no title upon the vendee.

It seems pretty clear from the evidence that all the original purchasers from Love, except Wheeler and Owens, bought prior to the death of F. F. Robertson. The evidence left the date when Wheeler and Owens purchased in doubt. It was just that condition of evidence which should have been submitted to a jury under a proper charge, so that they might determine at what time the purchase occurred. Of this privilege they and the appellant were deprived by the manner in which the cause was submitted to the jury by the court; and this was error which will demand a reversal of the judgment. Had the evidence been clear and positive that Wheeler and Owens had bought before the death of Love's ward, we should affirm the judgment, as under our view of the law there could then have been no other finding but for the defendants upon any charge that might have been given to the jury. But we have no certain and positive evidence before us upon which the court below could have charged the jury to find in favor of the defendants in the issue as to the time of Wheeler and Owens' purchase, and hence we cannot say that as to them, or their claims under them, the verdict is correct

As the power of attorney to Love and the sales made under it do not depend for their validity upon the reservation in the mortgage, but can and must be supported upon the independent right of F. W. Robertson, as mortgagor, to sell the land subject to the mortgage lien, there is no question of personal trust or of application of purchase money in the case. It is only upon the provisions of the reservation that these questions arise. The general right to sell subject to the lien, which mortgagees possess, unless restrained by the terms of the

mortgage, is, of course, not a personal trust; and there is no legal obligation resting upon him, without an agreement to that effect, to apply the proceeds of sales to the payment of the mortgage debt.

Nevertheless, when the sales were made and the purchase money received by Love, as guardian, though under a power from the mortgagor, a legal obligation rested on him to apply the money to the benefit of his ward. If he failed to do this the recourse of the ward, and of those succeeding to his rights, was upon Love and not upon the purchasers from him. These views, as we have stated, would lead to an affirmance of the judgment, but for the condition of the evidence as to the purchase made by Wheeler and Owens already mentioned. As the evidence upon this question was not submitted to the jury for their finding as to the date of the purchase, rehearing will be granted, and the judgment reversed, and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered December 11, 1885.]