# THIRD DISTRICT, DECEMBER, 1892.

## WM. F. ROBERTSON v. GEORGE T. COATES ET AL.

### No. 1C.

**1. Trustee—Concurrent Remedies.**—August 23, 1858, F. W. Robertson, guardian of F. F. Robertson, executed a mortgage upon certain lands to his sureties on his bond as guardian, to secure them and to save harmless the ward. *September, 1859, another guardian having been appointed,* F. W. Robertson executed a power of attorney to such other guardian, empowering him to sell the lands mortgaged. October 24, 1860, Love, the second guardian, obtained judgment against F. W. Robertson and his sureties upon his bond, and a decree foreclosing the mortgage. In 1862 Love, under his power of attorney, sold the land in controversy, which was included in the mortgage and decree of foreclosure. Subsequently the land was sold under the decree. In litigation between plaintiff, holding under the foreclosure, and defendants, holding under the deed by Love under the power of attorney, it was held that Love "held united in himself as guardian all the right to sell which the power of attorney could give him, and also the privilege of having the land sold under the deed of foreclosure. Between these methods of converting the land into money he could choose, and by either he could convey a good title." It follows that the purchaser under the foreclosure took nothing, the land having been sold under the power.

**2. Power to Sell as Affected by Death of Constituent.** — A contract to sell land made by an agent in the lifetime of his principal, and perfected after his death, is a valid execution of the power, and conveys the land.

**3. Same Issue.**—The main question raised in this case was adjudicated upon a former appeal (65 Texas, 37), upon a statement of facts showing substantially the same issues. See opinion.

**4. Stare Decisis.**—Cases are exceptional and of rare occurrence where a decision of an appellate court will be disregarded by a court of inferior rank.

**5. Secondary Evidence of Lost Instrument—Search.**—Where no objection is made to the testimony tending to show the execution, loss, and contents of a material document, because sufficient search had not been shown to find the original, the question of the competency of such testimony can not be raised by asking an instruction that the search was not sufficient.

6. **Assignments of Error—Charge of Court.**—An assignment of error attacking a charge should point out such error, and show wherein it is erroneous.

7. **Practice in Supreme Court—Assignments of Error.**—Ordinarily an assignment of error ought to be complete in itself; and if it is not, and there is something else in the record essential to an intelligent ruling upon it, the latter at least should be embraced in the statement in the brief under the assignment.

8. **Conduct of Counsel in Trial Court.** — See matters complained of in conduct of counsel on the trial held no ground for reversal on appeal.

APPEAL from McLennan. Tried below before Hon. A. J. HARRIS, Special District Judge.

*E. H. Graham*, for appellant.—1. (1) The sales by Love, so far as his ward was concerned, were without authority of law, and could not affect his interests. Smith v. Dibrell, 31 Texas, 244; Dibrell v. Smith, 40 Texas, 447; Rainey v. Chambers, 56 Texas, 17; Sargent v. Wallis, 67 Texas, 488; Kempner v. Wallis, 2 W. & W. Cond. Cases, 588, 599; McDuffie v. McIntyre, 32 Am. Rep., 500. (2) Love ceased to be guardian on the death of his ward, on October 14, 1862, and acts done by him and payments made to him after that did not affect his ward's heirs. Young v. Gray, 60 Texas, 543; Fortson v. Alford, 62 Texas, 580; Timmins v. Bonner, 58 Texas, 561; Tyler on Inf. and Cov., 266; Perry v. Brainard, 11 Ohio St., 442; Bank v. Babo, 9 Rich. (Law), 31. (3) The notes for the deferred payments could not be received in payment if so intended. Robson v. Watts' Heirs, 11 Texas, 764; McAlpin v. Cassidy, 17 Texas, 449; Martin v. United States, 15 Am. Dec., 130. (4) The sales were not beneficial to the ward, and the heir has the right to avoid them. Smith v. Dibrell, 31 Texas, 244; Schouler on Dom. Rel., 2 ed., 509.

2. (1) The power reserved in the mortgage and the power of Love were revoked and merged in the judgment of 1860. Ware v. Bennett, 18 Texas, 809; Freem. on Judg., sec. 215, et seq.; Wayman v. Cochrane, 35 Ill., 152; Speed's Exr. v. Hahn, 15 Am. Dec., 81. (2) The judgment of 1874 is res judicata against defendants. Smith v. Power, 2 Texas, 57; Hatch v. Garza, 22 Texas, 176; Teal v. Terrell, 48 Texas, 491; 1 Stark. Ev., 195; Lea v. Lea, 96 Am. Dec., 775; Freem. on Judg., 260. (3) It is not res judicata against plaintiff. Teal v. Terrell, 48 Texas, 497; Russell v. Place, 4 Otto, 606. (4) Love could not sell so as to release the lien without an order of court authorizing it.

3. The charge asked by plaintiff should have been given, to the effect that the search made for the supposed bond to Wheeler & Owens, as shown by the evidence, was not in law sufficient, and that they should disregard all the evidence relating to it. Dunn v. Choate, 4 Texas, 18; Vandergriff v. Piercy, 59 Texas, 372; Bray v. Aikin, 60 Texas, 691; 1 Whart. Ev.,

145, 147; Fletcher v. Jackson, 56 Am. Dec., 100. (1) Execution, contents, etc., of bond. Hampshire v. Floyd, 39 Texas, 105; Tayloe v. Riggs, 1 Pet., 600; 1 Whart. Ev., 141 et seq.; 1 Greenl. Ev., 558, note; Abb. Trial Ev., 709; Metcalf v. Van Benthuysen, 3 N. Y., 424; Edwards v. Noyes, 65 N. Y., 125. (2) Improper conduct of counsel. Willis v. McNeill, 57 Texas, 465; Taylor v. McNutt, 58 Texas, 71; Sinclair v. Stanley, 69 Texas, 727; Railway v. Irvine, 64 Texas, 535; Railway v. Jarrell, 60 Texas, 270.

*Theo. G. Jones*, also for appellant.—D. H. Love, as guardian of the minor, F. F. Robertson, having obtained a judgment and decree of foreclosure of a mortgage on the land in controversy, could not afterwards, by virtue of his capacity and authority as such guardian, have sold, or consented to the sale of, the land in discharge of the mortgage and judgment lien, for other consideration than the payment to him of the mortgage and judgment debt, in any other manner than that directed by the judgment and decree; and the private sales of the land made by him under a power of attorney given him by the mortgagor before the rendition of the judgment and decree of foreclosure of the mortgage, for less than the judgment debt, whether for the value of the land at the time or not, were a breach of trust, and passed no valid title, in law or equity, as against the minor to the purchasers, and those claiming under and through them here with notice. (1) Of duty and power of guardian as trustee, breach of trust, and trust property followed. Pasch. Dig., arts. 3902, 4675, 1480; Ware v. Bennett, 18 Texas, 809; Shelby v. Burtis, 18 Texas, 649; Morrison v. Bean, 15 Texas, 267; Crosby v. Huston, 1 Texas, 225; Mills v. Traylor, 30 Texas, 7; Young v. Van Benthuysen, 30 Texas, 769; Ryan v. Porter, 61 Texas, 113; Smith v. Dibrell, 31 Texas, 239; Rainey v. Chambers, 56 Texas, 17; Sargent v. Wallis, 67 Texas, 486; Wright v. Doherty, 50 Texas, 41; Merriman v. Russell, 39 Texas, 284; Kennedy v. Baker, 59 Texas, 150; Williamson v. Berry, 8 How. U. S., 544, 545, 547, 548, 549, 550; 2 Pome. Eq. Jur., secs. 1061, 1062, 1064, 1048, 1079, 1080; 2 Perry on Trusts, secs. 602g, 511b, 475, 602p, 780, 782, 783, 602ee, 828, 474, 764, 770, 771, 603; 2 Story's Eq., secs. 1258, 1262, 1352, 1353, and note; McDuffie v. McIntyre, 11 S. C., 551; Annesley v. Ashurst, 3 P. Wms., 282. (2) Of notice to purchasers. Robson v. Osborn, 13 Texas, 307, 308; Merriman v. Russell, 39 Texas, 284, 285; Williams v. Murphy, 36 Texas, 176, 177; Taul v. Epperson, 38 Texas, 495, 496; Hutchins v. Chapman, 37 Texas, 612; Delespine v. Campbell, 52 Texas, 11, 12; Williamson v. Berry, 8 How. U. S., 545; 2 Perry on Trusts, secs. 831, 814, note 2; Shaw v. Spencer, 100 Mass., 382; Bowes v. East London Water Works Co., 4 Cond. Eng. Ch. Rep., 155. (3) Of estoppel and confirmation by court. Rainey v. Chambers, 56 Texas, 17; Clayton v. McKinnon, 54 Texas, 212; Smith v. Dibrell,

31 Texas, 243, 244; Wright v. Doherty, 50 Texas, 41, 42; 2 Perry on Trusts, 3 ed., secs. 606, 602aa, note 4; McDuffie v. McIntyre, 11 S. C., 551.

*Alexander & Winter, Herring & Kelley,* and *Clark & Dyer,* for appellees.—1. The court did not err in charging the jury, in effect, that those defendants holding under R. B. Burleson showed a good title to the part of the land claimed by them, and in charging the jury, in effect, that all the defendants (the others claiming under Wheeler & Owens) showed good titles, if a bond for title was made by Robertson through D. H. Love, guardian of F. F. Robertson, to Wheeler & Owens, prior to the death of F F. Robertson: because such was the law as expounded by this court upon a record the same, in substance, as to this point, and this court will adhere to the former decision. Robertson v. Coates, 65 Texas, 37; McConnell v. Wall, 67 Texas, 353; Sydnor v. Gascoigne, 11 Texas, 456; Burns v. Ledbetter, 56 Texas, 282; Frankland v Cassaday, 62 Texas, 418; Lowell v. Ball, Hutchings & Co., 58 Texas, 566; 3 How., 424; 12 Pet., 488

2. The court did not err in charging the jury, in effect, as stated in counter-proposition 1, because D. H. Love, guardian, as plaintiff in the decree of foreclosure, with the powers of F. W. Robertson to sell, did convey a good title to Burleson and to Wheeler & Owens, the sale to Wheeler & Owens by title bond prior to the death of the minor being proved. Robertson v. Coates, 65 Texas, 37; Hill v. Moore, 62 Texas, 610; Edwards v. Brown, 68 Texas, 329; Ish v. Crane, 8 Ohio St., 521.

KEY, ASSOCIATE JUSTICE.—This is an action of trespass to try title to about 250 acres of land near the city of Waco, commenced June 21, 1881. Appellant was plaintiff in the court below, and Geo. T. Coatés and several other persons named in the pleadings were defendants.

The defendants all answered, by general demurrers, pleas of not guilty, three, five, and ten years statutes of limitations, and all, except defendant Little, suggested improvements in good faith. The second trial of the case in the District Court occurred in October, 1888, in which a verdict was returned, and judgment entered thereon, for the defendants.

Upon the testimony in the record this court finds:

1. Plaintiff and defendants claim title to the land in controversy under Felix W. Robertson as a common source.

2. August 23, 1858, Felix W. Robertson executed a mortgage to Rebecca B. Robertson and Wilson Y. McFarland on the property involved in this suit, and on several other tracts of land in Washington and other counties in Texas. This instrument recites the fact that Felix W. Robertson had been appointed guardian of the person and estate of Felix F. Robertson, a minor, by the County Court of Washington County, and as such had in his hands between $5000 and $10,000; that Wilson Y. Mc-

Farland and Henry V. Robertson had become sureties on his bond as such guardian, and that he desires to secure and save them harmless, etc.    It then conveys the land therein described to secure and save harmless said Felix F. Robertson, by reason of the appointment of said Felix W. Robertson as his guardian; and second, to secure and save harmless the said Wilson Y. McFarland and Rebecca B. Robertson from all liabilities incurred by them by reason of said McFarland and Henry V. Robertson having become sureties on said Felix W. Robertson's bond as such guardian.    This mortgage contains the following stipulation, viz.:    " But it is further expressly stipulated and agreed, that in the meantime the said party of the first part shall have the privilege of selling or disposing of any or all the tracts or parcels of land aforesaid, for the best price and upon such terms as he may see proper, always appropriating the proceeds thereof to the payment and extinguishment of his and his sureties' liabilities on the bond as guardian, and not otherwise."

This mortgage was recorded in the record of deeds, mortgages, etc., of McLennan County, Texas, in which county the land in controversy is situate, on the 30th day of August, 1858.

3.  On the ——— day of September, 1859, Felix W. Robertson executed a power of attorney to " D. H. Love, guardian of the minor F. F. Robertson," authorizing him to sell and convey all the several tracts of land described in and conveyed by the mortgage above referred to in the second finding.

This is in the usual form of such instruments, except that it describes D. H. Love as guardian of the minor F. F. Robertson.    It was duly recorded in the county clerk's office of McLennan County, August 11, 1862.

4.  October 24, 1860, a judgment was rendered in the District Court of Washington County, Texas, at the suit and in favor of David H. Love, as guardian of said Felix F. Robertson, and against Felix W. Robertson and Wilson Y. McFarland, and W. H. Robertson, administrator of the estate of Henry V. Robertson, deceased, on the bond of Felix W. Robertson as guardian of said Felix F. Robertson, for $8357.82, with 8 per cent interest from date of judgment; and with a decree foreclosing the aforesaid mortgage on all the lands covered by it, and ordering them sold as under execution for the satisfaction of said judgment for $8357.82.

5.  An order of sale and execution issued on said judgment January 28, 1861, to Bell County; and the sheriff's return thereon shows a levy and advertisement for sale, but sale held up by order of plaintiff's attorney.    Also similar order of sale to Bell County, issued May 16, 1861, with like return thereon.

6.  Felix F. Robertson died October 14, 1862, while he was a minor, leaving as his only heirs Alice F. Robertson, his surviving wife, and Wm. F. Robertson, their only child, and now plaintiff herein.

7. In July, 1862, D. H. Love, acting under the aforesaid power of attorney from Felix W. Robertson, negotiated a sale of 90 acres of the land involved in this suit to R. B. Burleson, and the remainder thereof to a partnership known as Wheeler & Owens, consisting of J. W. Wheeler and S. A. Owens. July 28, 1862, Felix W. Robertson, by D. H. Love, his attorney in fact, executed a bond for title to said R. B. Burleson, agreeing to convey the 90 acres of said land so negotiated to him (describing it by metes and bounds) by warranty deed. This instrument recites a consideration of $240 cash, and $480 to become due November 1, 1863, bearing 10 per cent interest from date. It was shown by parol evidence that all this purchase money was paid to Love. The first payment was made in July, 1862, but the testimony does not show when the other payment was made, nor does it show the amount of each payment.

8. The consideration for the Wheeler & Owens purchase was $946, and the deed executed therefor in February, 1863, recites that it was a cash payment. Parol testimony indicates that about half of it was paid in July, 1862, and the other half probably after the death of Felix F. Robertson.

9. It was shown that there had been a bond for title for the Wheeler & Owens purchase, which is now lost; that it was also executed by said D. H. Love; and the jury found that it was executed by Love as agent for Felix W. Robertson prior to the death of Felix F. Robertson; and though the testimony on these issues is meager, we hold it is sufficient to support the verdict.

10. January 20, 1863, Felix W. Robertson, by D. H. Love, agent, by warranty deed, reciting a cash consideration of $720, conveyed said 90 acres to said R. B. Burleson. This deed was duly recorded in McLennan County August 28, 1863; conveys same land described in bond for title, but does not refer to the bond.

11. February 4, 1863, Felix W. Robertson, by D. H. Love, agent, by deed conveyed 157.7 acres, the remainder of the land in controversy, to Wheeler & Owens.

Plaintiff admitted that this was a deed duly executed, but denied that it was properly authenticated for record, though it had been put on record; but as the parties have agreed that if the judgment is not affirmed the case is to be remanded, and as the question is not raised by assignment of error, the certificate of authentication is not copied in this finding.

12. Transfers from said Burleson down to defendants Allen, Hohen, Sparra, Bloomer, Eastland, and Green, to part of the Burleson 90 acres, and descent cast to balance to defendants Burlesons, Moores, and Rodneys (as shown by appellant's brief).

Transfers from Wheeler & Owens down to defendants Coates, Little, and Compton for the land acquired by them under their purchase from D. H. Love, as agent aforesaid.

13. October 5, 1874, the judgment of the District Court of Washington County, Texas, rendered October 24, 1860, in favor of D. H. Love, as guardian of Felix F. Robertson, against Felix W. Robertson et al., was revived as against said Felix W. Robertson.

14. The suit to revive the judgment was brought by Alice F. Robertson, as surviving wife of Felix F. Robertson and as guardian of Wm. F. Robertson, the present plaintiff; and in her petition she made Felix W. Robertson, Wm. H. Robertson, as administrator of the estate of Henry V. Robertson, X. B. Sanders, administrator of the estate of Wilson Y. McFarland, R. B. Burleson, James H. Fry, John S. Allen, S. A. Owens, and J. W. Wheeler defendants.

At the trial demurrers interposed by the defendants William H. Robertson, R. B. Burleson, S. A. Owens, J. W. Wheeler, John S. Allen, and James H. Fry were sustained, and they were dismissed. The latter judgment revives the former against Felix W. Robertson only, and recites that the plaintiffs being the only heirs of Felix F. Robertson, deceased, the former judgment shall be in full force and effect in their behalf as plaintiffs against said Felix W. Robertson, and that executions and orders of sale may issue, etc.

15. February 9, 1875, an order of sale and execution was issued on said judgment for sale of the land in Washington County, covered by said mortgage and decree, and same was sold thereunder to F. W. Robertson.

16. October 21, 1875, a similar order of sale and execution was issued to Bell County for the sale of the land in that county, and same sold thereunder to Mrs. Alice F. Robertson.

17. March 7, 1876, similar order of sale and execution was issued to Williamson County, and land sold thereunder to Alice F. Robertson.

18. August 23, 1876, an order of sale and execution was issued on said judgment for any balance unpaid, to McLennan County, ordering the sale of the land in controversy as under execution, with endorsements thereon showing the total credits to which the judgment was then entitled to be $1775.91. The sheriff's return endorsed thereon shows a levy on said land September 9, 1876, due notice of sale, and sale made in pursuance thereof, in conformity to law, on the first Tuesday (3d day) of October, 1876, to William F. Robertson, plaintiff herein, for $35, and a deed made accordingly, and crediting the proceeds on the writ.

19. October 3, 1876, P. F. Ross, as sheriff of McLennan County, Texas, executed a deed, in due form, conveying the land in controversy, under said writ, levy, and sale, to William F. Robertson, plaintiff herein. Said deed was duly recorded in land records of McLennan County, October 16, 1876.

20. Neither of the heirs of Felix F. Robertson—Alice F. Robertson and the plaintiff herein—ever received any of the consideration paid by

R. B. Burleson and Wheeler & Owens to D. H. Love for the land in controversy.

21. D. H. Love died in 1866, and was at the time of his death insolvent.

22. It was shown at the time of the trial that R. B. Burleson and J. W. Wheeler were dead; the former died in 1879 and the latter between 1874 and 1879.

23. At the time R. B. Burleson and Wheeler & Owens purchased the land in controversy from D. H. Love as agent for F. W. Robertson, they had no actual knowledge of the mortgage executed thereon by said F. W. Robertson, nor of the judgment of the District Court of Washington County, foreclosing the mortgage.

24. There appears to have been testimony tending to support the pleas of limitation and improvements in good faith; but it is not set out in detail in the statement of facts, but it is agreed therein that the testimony on these issues requires that they be submitted to a jury, should the case be reversed.

On the former appeal in this case (Robertson v. Coates, 65 Texas, 37), the Supreme Court, in an opinion by Chief Justice Willie covering the salient features of the case, held, that after the execution of the power of attorney by F. W. Robertson to D. H. Love in September, 1859, and the foreclosure, in 1860, by Love, as guardian of the estate of F. F. Robertson, of the mortgage executed by F. W. Robertson in 1858, said Love "held united in himself, as guardian of F. F. Robertson, all the right to sell which F. W. Robertson's power of attorney could give him, and also the privilege of having the land sold under the decree of foreclosure and in satisfaction of it. Between these two methods of converting the land into money he could choose; and by either he could convey a good title to a purchaser."

It was held, however, that his power to sell, in so far as it affected the rights of his ward, terminated with the death of the latter, and that any sales made by Love subsequent to the death of F. F. Robertson, his ward, conferred no title. The opinion then states that if the evidence had been clear and positive that Wheeler & Owens, under whom some of the defendants claim, had purchased before the death of the ward, the judgment would have been affirmed. But as the record left the date of their purchase in doubt, and the question had not been submitted to the jury, the cause was reversed and remanded.

At the trial from which this appeal has resulted this issue alone was submitted to the jury, and they found, in effect, that the Wheeler & Owens purchase was made, and bond for title executed and delivered, prior to the death of F. F. Robertson, the ward.

On the present appeal, it is contended, in behalf of appellant, that the former opinion should not control the decision of the case; (1) because the facts on this appeal are different from those appearing in the record of the former appeal; and (2) because the doctrine announced, as above stated, on that appeal, is unsound and ought not to be adhered to.

1. As to the first of these positions, it is claimed that the record in the former appeal did not clearly disclose the fact that the mortgage above referred to was given to secure the ward, F. F. Robertson, as well as the sureties on F. W. Robertson's bond.

It is true that the mortgage was not copied in full in the record in that case, as it is in this; but the clause reserving the right to sell the land, and requiring the proceeds to be appropriated to the extinguishment of F. W. Robertson's liability on his bond as guardian of F. F. Robertson, is copied in full in the statement of facts. The judgment and decree of the District Court of Washington County, rendered upon and foreclosing the mortgage in question, in favor of Love, as guardian and for the benefit of F. F. Robertson, his ward, as well as the judgment reviving the same in 1874, were copied in full in the transcript on the former appeal; and the original decree recites the fact that the mortgage was executed to secure F. W. Robertson's indebtedness to his ward, F. F. Robertson. There is nothing in the opinion of the Supreme Court indicating that it was not understood, as clearly disclosed by the former record, that at the time of the sales to Burleson and Wheeler & Owens, F. F. Robertson, under whom appellant claims, had a lien on the land, first secured by a mortgage, but at the time of said sales merged into a judgment.

On the contrary, it is apparent that the court appreciated the fact that the mortgage, given only in substance in the former record (which omits to state that it was given to secure F. W. Robertson's ward, as well as his sureties), was the identical mortgage that was foreclosed in behalf of the ward, by the judgment of the District Court of Washington County, because in the opinion it is so stated, and it is held that the judgment referred to cancelled F. W. Robertson's right to sell the land, arising out of the reservation, which is copied in the former record as part of the mortgage referred to.

On the questions ruled on, we do not think the record before the Supreme Court, which we have carefully examined, is essentially different from the one sent up on this appeal.

2. It may be true that appellate tribunals may sometimes render decisions so obviously wrong as that other courts, of lower rank, will be justified in disregarding them upon other trials of the same cases. Such cases, however, are exceptional and of rare occurrence; and the present case does not belong to that class. We shall hold that the former opinion

announces the law of this case, and we think the court below correctly interpreted the same when it submitted but the one issue to the jury.

The record on the other appeal clearly disclosed the fact that the deeds from F. W. Robertson, by Love as agent, to Burleson and Wheeler & Owens were executed subsequent to the death of F. F. Robertson; and in view of this fact, when the Supreme Court held that the validity of sales made by Love was dependent upon whether they were made before or after the death of his ward, we conclude that court did not refer to the execution of the deeds, but rather to the time when the contracts of sale were made.

The fifteenth assignment of error complains of the refusal of the court to charge the jury, at request of appellant, that the search made for the supposed bond for title to Wheeler & Owens, as shown by the evidence, was not in law sufficient, and that they should disregard all the evidence relating to it. Appellant did not object to the introduction of the testimony tending to show the execution, loss, and contents of the bond in question because sufficient search had not been made for it; and not having made such objection, we do not think he had the right, after the evidence was closed, to raise substantially that objection by a special charge. If the objection had been made to the testimony, and sustained, appellees might have produced the legal representative of Judge Renick, in whose custody this bond was last seen, and proved that it could not be found among his papers.

What has already been said disposes of the controlling questions in the case, and all of the assignments of error predicated upon the action of the District Court in giving and refusing charges, except the seventeenth, which, under the statute and rules, is too general. It merely charges that the court erred in adding a certain qualification to special charge No. 9 asked by appellant, without pointing out why such qualification was error. Was it because the testimony did not warrant the qualification, or was it because it was upon the weight of evidence? A charge may be erroneous for several reasons, and an assignment of error challenging its correctness should assign a reason why it is alleged to be incorrect.

There are several assignments of error based upon the ruling of the court in admitting or rejecting testimony, all of which refer to certain bills of exceptions, by number, for appellant's reasons for claiming that the court erred.

Nowhere in appellant's brief are the reasons given for the assertions that the court committed error in the rulings referred to, and to ascertain why he charges error in these matters we are compelled to examine the bills of exceptions in the record. The rules are designed to enable appellate courts to decide cases without looking to the record, except where counsel for the parties differ as to what appears therein.

Ordinarily an assignment of error ought to be complete in itself; and if it is not, and there is something else in the record essential to an intelligent ruling upon it, the latter ought at least to be embraced in the statement under the assignment.    Under the statute and rules, the assignments referred to are insufficient, and will not be considered.    Sup. Ct. Rules 24, 25; Rev. Stats., art. 1037.

The last assignment of error complains of the action of the court in overruling appellant's motion for a new trial, charging that the verdict of the jury is contrary to the law and the evidence, and that the jury were influenced by certain alleged improper conduct of one of appellee's counsel.

As stated in our finding of facts on the issues submitted to the jury, the testimony, though meager, supports the verdict.

As to the other matter complained of, it appears that one of appellees' counsel demanded the right to inspect and offer in evidence a certain written instrument shown to be in the custody of one of appellant's counsel; that he was asked by appellant's counsel to state his purpose for desiring to see and introduce the instrument in evidence; that he then stated that he expected to prove by the instrument that a part of, if not all, the land in controversy had been conveyed to appellant's attorneys before this suit was brought; that while he was making this statement, one of appellant's counsel objected to it being made in the hearing of the jury, charging that the statement was intended for the jury; that the objection was not heeded, and the statement completed; that appellant's counsel then handed the paper to the court for inspection, and after reading it the court stated, in the hearing of the jury, that it was not a conveyance, was a private paper not admissible in evidence, and that the counsel would not be required to submit it to the inspection of others; that appellees' counsel then, in a rather loud and authoritative tone, stated that he wished to inspect the paper for the purpose of preparing a bill of exceptions to the ruling of the court, and upon objection the request was refused.    It also appears that appellees' counsel, in addressing the jury, stated that the perseverance of appellant's counsel, their manner of conducting the case, and what had transpired during the trial in the hearing of the jury, showed them to be largely interested in the result of the suit; and stated that appellant showed a grasping spirit in the manner of interrogating witnesses in reference to improvements.

While there may have been some departure from that decorum which should always prevail in a court of justice, we do not believe that the conduct of appellees' counsel, complained of by appellant, improperly influenced the jury.    Besides, the statement of what he expected to prove by the written instrument was made at the request of one of appellant's attorneys.    If the tone of voice in which he demanded an inspection of

the paper was in excess of the rules of propriety, we do not perceive why that fact should have influenced the jury against appellant.

The judge states, in qualifying the bill of exception, that the language used in argument was not objected to at the time; and we do not think it was calculated to improperly influence a jury of ordinary honesty and intelligence.

We have considered all the questions properly presented in appellant's brief, and finding no reversible error, the judgment is affirmed.

*Affirmed.*

Delivered December 7, 1892.