### Eugene Graham v. The State.

#### No. 2150. Decided May 29, 1901.

**1.—Judge—Disqualification—Attorney and Client.**

Where the disqualification of the trial judge is interposed upon the ground, that the relationship of attorney and client had existed between the judge and defendant in the case, it is immaterial that the attorney's fee asked by the judge had never been paid or arranged to be paid. If the judge visited defendant while in jail for the purpose of securing his fee, and defendant voluntarily and without solicitation on his part told him some of the facts in the case; and if he consulted with the other attorneys in the case prior to the examining trial and before the death of deceased, these facts sufficiently established the relationship of attorney and client as to disqualify him from sitting as judge to try the case.

**2.—Same.**

Where the relation of attorney and client has been created, or once had an existence in regard to conversations then made, or matters advised about, it continues forever as to these matters and can not be changed even by consent of parties.

Appeal from the District Court of Robertson. Tried below before Hon. J. L. Goodman, Special Judge.

Appeal from a conviction of murder in the second degree; penalty, thirty-five years imprisonment in the penitentiary.

The indictment charged appellant with the murder of A. L. Boswell, on the 16th day of March, 1900, by shooting him with a gun.

Defendant pleaded to the jurisdiction of the court upon the ground that Hon. J. L. Goodman, the special judge presiding, was disqualified from trying the case on account of the relation of attorney and client which had existed between the said J. L. Goodman and defendant in this case. This plea was overruled, and the case, on this appeal, having been disposed of by a determination of that question, no general statement is required.

The case is fully stated in the opinion, as the only question disposed of was that of the disqualification of the judge.

*Campbell & Gann,* for appellants.

*D. E. Simmons,* Acting Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of murder in the sec-

ond degree, and his punishment assessed at thirty-five years confinement in the penitentiary.

In the view we take of this case, it is only necessary to consider one question. Appellant, in his motion for new trial, urges that the Hon. J. L. Goodman, the special judge who tried this case, was disqualified by reason of the fact that he had been counsel for appellant. This matter is presented in the shape of affidavits attached to the motion. James M. Brown, in his affidavit, states that he was an uncle of Guy and Eugene Graham; for the purpose of employing assistant counsel in the cause for defendant, affiant secured the services of J. L. Goodman, an attorney of Franklin, Robertson County, who sat as special judge in this trial; that affiant and Goodman agreed upon the fee that should be paid for his services as attorney for the said Graham, and affiant agreed to execute and deliver to said Goodman a joint note for the amount so agreed upon; and that afterwards affiant regarded him as counsel for the said Grahams, and so treated and consulted with him; that, as such attorney, affiant afterwards consulted and advised with said Goodman concerning the management and conduct of the defense of the case, in which such conversation the facts were freely and unreservedly discussed, and the said Goodman advised as to the best defense to set up for the Grahams, and how to establish this defense. The son of J. M. Brown corroborates the statement of his father, and says he had a conversation with said Goodman as to his employment as attorney for the Graham boys, in which Goodman told him he was in the case (meaning in the case against the Grahams for the murder of A. L. Boswell), and affiant's father understood it, and he was working quietly in the case and talked freely with affiant about the facts of the case. The affidavits of George W. Glasscock, J. D. Gann, and W. O. Campbell, attorneys for defendant (the first being an uncle by marriage of appellant), all show that Goodman participated with them in the discussions and consultations in regard to the facts of the case, and they regarded and treated him as an attorney in the case on several occasions prior to the finding of the indictment. Appellant's affidavit shows that Goodman visited him in jail, talked with him freely about the facts, and he consulted with him, believing he was employed as attorney for the defense.

Hon. J. L. Goodman stated that he sat as special judge in the trial of appellant. He denies that he was of counsel for appellant, or his brother Guy Graham, and never represented either of said parties; that the relation of attorney and client never existed between himself and appellant; that he never, as attorney for appellant, advised him or either of the Grahams about their defense. He then states: "That soon after the shooting of A. L. Boswell, and before the death of the said Boswell, which occurred about twenty-six days after he was shot, affiant was called upon by J. M. Brown (who files an affidavit), an uncle of appellant, with reference to securing his services in representing appellant as an attorney; that witness named said Brown a fee that he

would charge for his services, and that Brown told affiant at that time he would arrange to pay a part of the fee demanded, and stated he could not and would not pay any more; that appellant and his brother owned some horses, and they ought to be able to arrange the balance of the fee; that affiant, at Brown's request, went to the jail, where the parties were then confined, for the purpose of arranging with them for the fee as suggested by Brown; that while there the Grahams commenced telling him about the case; that he told them at the time he was not there to hear about the case and to advise with them about their defense, but to see if they could arrange the fee as suggested by their uncle. Affiant states that no fee was arranged, and that he did not become the attorney for the Grahams. That any statements made to him by the Grahams while in jail was voluntarily made by them, without any solicitations or even inquiry on his part.. Affiant says it is true that some time in March, 1900, G. W. Glasscock (an uncle by marriage of Guy and Eugene Graham) was in the town of Franklin; that he was at the office of Campbell & Gann, attorneys for the Grahams; that J. D. Gann invited affiant to his office to meet Mr. Glasscock; that Glasscock was an old friend of affiant's and he desired to meet him; that while there a discussion came up with reference to the Graham cases, as affiant remembers it, relative to the employment of an expert in the use of an X-ray apparatus with the view of locating the bullet in the head of deceased; that in this discussion he might have expressed an opinion that it would be well to do so, but it was only the expression of a friend of Glasscock's, and not as an attorney for the Grahams; if Glasscock recognized and treated affiant at the time as an attorney for the Grahams, he had no reason to do so; that he did not inform Glasscock that he was not an attorney for the Grahams. Affiant denies that he consulted with Campbell & Gann, attorneys for the Grahams, in which the facts of the case were freely discussed, and the line of defense to be adopted was considered." He says: "Contemplating employment, he had some talk with Campbell & Gann, before the death of deceased, about the cases; that no defense could be considered or was considered; that he did not seek to advise with either Campbell or Gann about the case, or to be admitted to their discussions, and that both of defendant's attorneys knew his fee had not been satisfactorily arranged, and that he was not retained in the case; that all conversations had with the attorneys for the Grahams was before the death of deceased, and before any examining trial was had in precinct No. 6 of Robertson County, on the charge against said Grahams of the offense of assault with intent to murder the said A. L. Boswell; that affiant had nothing to do with any of the trials of the cases."

From the affidavit of the Hon. J. L. Goodman, it appears that he visited appellant while in jail, for the purpose of securing his fee, in order that he might represent him. That while there appellant voluntarily told him some of the facts of the case. He admits he talked with Campbell & Gann prior to the examining trial, and prior to the death

of deceased, for whose murder appellant in this case was tried, but they knew his fee had not been paid at the time of conference; that these consultations were not sought by himself. We think the learned judge's own affidavit shows he is disqualified to sit in this case. In Abrams v. State, 31 Texas Criminal Reports, 450, we held the fact that appellant suggested Gardner for special judge, and agreed he would not take advantage of his disqualification, would not alter the rule, if it should subsequently appear that he was disqualified. Where the relation of attorney and client has been created, or once had an existence, in regard to communications then made or the matters advised about, it continues forever as to these matters, and can not be changed by consent. Flack's Adm'r v. Neill, 26 Texas, 273. The question of whether or not the trial judge was paid a fee as appellant's attorney is immaterial. We think an inspection of the affidavits shows that the relation of attorney and client existed between appellant and the trial judge. If an attorney should advise as to a matter in dispute, and subsequently become judge in the case, he would be disqualified from sitting, even though he charged no fee for his advice, provided he was consulted professionally; for he has been of counsel with reference to the matter in dispute, and the reasons for his disqualification to sit in the case will never cease. Railway v. Ryan, 44 Texas, 430; Slaven v. Wheeler, 58 Texas, 26. The affidavit of the trial judge shows a perfect consciousness on his part of no thought of employment in the case; but his affidavit, taken in connection with the other facts in the case,—in fact, his own affidavit,—in contemplation of law, creates the relation of attorney and client. This strict rule in reference to matters of this character is adopted, in order to maintain the utmost purity of the bench, and to keep the same free from any aspersions or accusations of corruption or partiality. Under a long line of decisions, this rule has been maintained.

The trial judge being disqualified, as indicated above, the whole proceedings become an absolute nullity, the judgment void, and the cause stands upon the docket of the District Court of Robertson County as if the proceedings complained of in this record had never occurred. This being true, we do not deem it necessary to pass upon any other assignment of error. The judgment is reversed, and the cause remanded.

*Reversed and remanded.*