FOSTER et al. v. BUCHELE et al.

No. 14942.

Court of Civil Appeals of Texas.
Fort Worth.

July 9, 1948.

Rehearing Denied Oct. 1, 1948.

A. V. Grant, of St. Jo, and McDonald & Anderson and George W. Anderson, all of Wichita Falls, for appellant.

J. Chancellor and Donald & Donald, all of Bowie, for appellees.

SPEER, Justice.

At the outset of this appeal we are confronted with a motion by appellee, Joe Benton, to: (a) Strike the filing of the statement of facts, and (b) to tax costs against appellant for unnecessary instruments copied into the transcript.

When the motion came to our attention we found the statement of facts was incomplete, in that it had not been approved by counsel, but was signed by the trial court without a certificate showing the necessity therefor.

The motion pointed out twenty-seven objectionable matters either contained in or omitted from the statement of facts; the clerk, at the request of this court, instructed counsel for the parties that 15 days' time after March 15, 1948 would be given to perfect the statement of facts, and if no agreement was reached within that time, attention was called to Rule 377, Texas Rules of Civil Procedure.

Thereafter within the alloted time the statement of facts was returned to this court signed by counsel for both sides, counsel for appellee signed "without prejudice to motion." Under the provisions of Rule 428, TRCP, we instructed the clerk to file the statement of facts; we are convinced that no harm has resulted from the discretionary powers exercised by us in the matter.

That part of the motion to tax appellant with costs for unnecessary documents included in the transcript will be observed in the disposition of this appeal.

One of the plaintiffs, E. J. Buchele, filed this suit for partition on September 29, 1943 against C. E. Foster, J. E. Perryman, Jr., M. J. Bone and M. M. Gilbert, alleging that plaintiff and the named defendants owned three tracts of land in Montague County, Texas, designating them as First, Second and Third tracts, each tract was described by metes and bounds; the petition set out the respective interests of the parties. As we shall presently see, it is unnecessary to recite more of the pleadings except to point out that defendant Gilbert answered the petition on December 3, 1943, claiming the interest alleged by plaintiff and asked for certain special relief not necessary to mention.

No further action appears to have been taken until on October 10, 1947, when Joe Benton (appellee here) obtained leave and filed a second amended petition as an intervening plaintiff with Buchele, against the four original defendants along with thirty or more others whose names need not be stated by us. The amended petition was in two counts: First, intervener Benton alleged a statutory trespass to try title action as to four tracts of land; they are designated as First, Second, Third and Fourth tracts, with a description by metes and bounds following each. First three tracts are the same as those involved in the original partition suit and the Fourth tract (the one here involved) was described by metes and bounds, as being 67¾ acres, the north half of 135½ acres of the T.M. Stroud survey, same being all of the survey of 160 acres less a described 24½ acres, in Montague County, Texas. By an alternative or second count, intervener Benton pleaded the nature of his title at great length, enumerating conveyances from plaintiff Buchele and from many of the other named defendants except appellant Gilbert. Benton pleaded that if Gilbert had any interest in the 67¾ acres (Fourth tract) it was only an undivided 9/16th interest. He pleaded Gilbert was estopped to claim more.

Aside from many special exceptions, of which no complaint is made, Gilbert pleaded the general issue, not guilty, and the statutes of five and ten years' limitation.

Trial was to the court without a jury. Judgment was entered for Benton for an undivided 10/16ths interest and in favor of Gilbert for an undivided 9/16ths interest in the 67¾ acres of the Stroud survey (fourth tract). The judgment recites disclaimers by certain defendants and specially divests all interest and title in and to the fourth tract out of all other defendants. And that all rights claimed by others not specifically granted were definitely denied. Because of insufficient relief awarded defendant Gilbert, he has perfected this appeal.

■ Fifteen other defendants who were denied relief timely excepted to the judgment and filed an appeal bond separate and apart from that of Gilbert. No briefs have been filed by any of the other fifteen appealing parties and no effort has been made by either of them to avoid the effect of Rule 415, TRCP, and it becomes our duty to dismiss their appeal under the cited rule.

Appellant Gilbert in his brief says he is not concerned about that part of the judgment relating to tracts 1, 2 and 3 but only that we review the judgment affecting the fourth tract of 67¾ acres in the Stroud survey. We shall observe this.

At the request of appellant the trial court filed findings of fact and conclusions of law. They are too lengthy for us to do more than refer to some of them as the occasion arises.

There are stipulations and uncontradicted evidence sufficient to support and even require findings of the following facts: The State of Texas patented to Staats, assignee of Stroud, 160 acres in Montague County. The survey consists of two quadrangular tracts, one containing 135½ acres, the other 24½ acres; the northwest corner of the smaller tract joins the southeast corner of the larger one. On December 15, 1890 Staats conveyed the smaller tract to Snow by deed recorded in Vol. 13, page 479, Deed Records of Montague County, Texas, to

which many future deeds made reference. In 1898 Staats conveyed the 135½ acre tract to W. O. and J. R. (John Richard) Fowler. On November 18, 1900, J. R. Fowler was married to Ollie Snyder (his only marriage). On July 15, 1905 W. O. and J. R. Fowler partitioned the 135½ acre tract by deeds in which J. R. Fowler took the north one-half or 67¾ acres, the tract in controversy here. There were born to J. R. and Ollie Fowler only the following children: Mary Estelle Fowler, who married Jones; Marvin E. (Elmer) Fowler; W. R. (Robert) Fowler, and Allen Lou Fowler, who married Reed. J. R. Fowler died intestate July 15, 1911, leaving surviving him his wife, Ollie, and the four named children. After the death of J. R. Fowler his wife, Ollie Fowler, married J. L. Goodgion. The land in controversy was the separate property of J. R. Fowler, deceased. The surviving wife, Ollie (Fowler) Goodgion, was dead at the time of this trial.

Appellant Gilbert claimed title to all of the interests in the 67¾ acres owned by the surviving wife, joined by her then husband, J. L. Goodgion, and three of the children, namely, Mary Estelle Jones, Marvin E. Fowler and W. R. Fowler.

Appellee Benton claimed title to the 67¾ acres under many conveyances from persons claiming either as heirs of the one heir, Allen Lou Reed, as well also from other persons who claimed under a former suit and attachment of the land, and under deeds from Marvin E. and W. R. Fowler, two of the sons under whom appellant also claimed.

Appellant relies upon seven points of error, some of which relate to the same matters and where we can do so we will group such points in this discussion. We will not discuss the points in the order presented in the brief. We have devoted much time to a close study of this whole record and have concluded that the judgment should be reversed and the cause remanded; we will give our reasons for this and only discuss other assigned errors with a view of being helpful upon another trial.

As we see it, the error assigned under appellant's fourth point must be sustained. The substance of the complaint there raised is that the trial court erred in admitting, over the objection of appellant Gilbert, the testimony of Donald & Donald, who had previously represented him in this suit, based upon the rule of confidential communication.

It conclusively appears that prior to the filing of this suit by Buchele against appellant and others, appellant consulted with Messrs. Donald & Donald, attorneys, concerning his rights in the land under the deeds held by him from three of the heirs and the surviving wife of J. R. Fowler, deceased. Their discussions involved the advisability of appellant filing a suit to clear up his title which he said he knew was "in a mess." The attorneys advised against such a suit for reasons disclosed to appellant. When Buchele filed suit, appellee employed Donald & Donald to represent him and they filed an answer as above pointed out. It is apparent that Buchele's suit was not disposed of, nor is there any indication that any effort was made to terminate the relation of attorney and client between appellant and Donald & Donald prior to the "late summer or fall of 1946." From that time until January 31, 1947 there is a hopeless conflict in the testimony. But for the purpose of discussing the point before us, the date and manner of the termination of the relation is immaterial.

It is proper to state just here that some time in November or December, 1946, negotiations were being had between appellee and appellant in regard to the interest acquired by appellant in the land which both parties believed had a potential oil and gas value. Appellant did not care to incur the expense of getting his title in a shape to sell a lease thereon and indicated to appellee that it would be all right for him to acquire outstanding interests and perfect the title. Both parties discussed the situation with appellant's attorneys, Donald & Donald. Appellee claims that appellant released the attorneys from their former employment by him and consented for them to represent appellee Benton. Apparently appellant did not so understand the result of such conferences. He says he did not

know Donald & Donald were not representing him until January 31, 1947, after the title had been perfected and a lease contract was presented to him to join appellee and others in such instrument. He signed the lease at that time, however, knowing the facts. There is no complaint by appellant that his former attorneys were representing appellee, but he only complains in this point of error because he was required to reveal in his testimony and the attorneys were permitted to disclose by their testimony the transactions between them while the relationship existed, in violation of the rule regulating confidential communications.

At different times when objections were being made by appellant's counsel to the testimony the court overruled them with a certain amount of reluctance by such statements as "the objection is overruled for the present," but when substantially all of the offending evidence was in the court overruled appellant's motion to strike the evidence of the attorneys on the subject.

■ Article 713, Code of Criminal Procedure, prohibits counsel from divulging information coming to him from his client. The purpose of such a rule is obvious and most wholesome. It was announced by the Court of Criminal Appeals in Graham v. State, 43 Tex.Cr.R. 110, 63 S.W. 558, that where the relation of attorney and client has been created as regards matters and communications had between attorney and client, that relation continues to exist as it affects disclosures of communications between them and is not altered by a termination of the relationship. The rule preventing disclosure of confidential communication has been uniformly applied in matters of a civil nature. The principle is one of public policy and justice demands that it be strictly observed. 44 Tex.Jur. 1061, sec. 93 et seq. See also Texas Law Review, Vol. 12, p. 146.

■ It is a rule of general acceptation that courts trying a case without a jury may disregard evidence they had improperly admitted or the appellate court may disregard it. On appeal it is presumed that

the trial judge disregarded incompetent evidence, especially where he so states in the record, but if a case is close and improper evidence received probably influenced the decision, reversal must follow. 41 Tex.Jur., pp. 1247-8, sec. 378; Moore v. Kennedy, 81 Tex. 144, 16 S.W. 740; D'-Arrigo v. Texas Produce Co., Tex.Civ. App., 31 S.W. 713. The issues in this case are closely drawn by the pleadings and the large volume of testimony before us. It is quite obvious to us that the trial court based his judgment awarding the named interests to the respective parties mainly upon the theory of estoppel set out in the court's twenty-seventh finding. This paragraph of the court's findings is too long to copy here, we shall refer to it again under a discussion of point 6. Appellant's testimony relating to his belief that he acquired an undivided ⅛ interest under each of the three deeds from the Fowler heirs are so closely connected with what the attorneys had previously advised him, which when strongly corroborated by the testimony of the attorneys, leads us to the inevitable conclusion that the court's finding of estoppel was influenced by the incompetent testimony of the attorneys. Our belief in this respect is strengthened by the fact that after the court had admitted the incompetent testimony over numerous objections and the full picture was before him, he overruled appellant's timely motion to "strike" the testimony of the attorneys as violative of the rule of confidential communications.

As above indicated, the error asserted under point 4 must be sustained.

Third point complains because the court found as a fact that appellee acted in good faith and was an innocent purchaser for value of his claimed interest in the 67¾ acre tract.

The thirty-third fact finding reads: "That Joe Benton (appellee) acted in good faith and as an innocent purchaser for value of all said properties."

■ The settled rule seems to be that where the rights of a purchaser of real estate against the claims of another are involved, whether he is "an innocent pur-

chaser" depends upon no notice to him of the claims of the other party. Innocent purchasers and bona fide purchasers for value involve some of the same essential elements, such as: good faith, valuable consideration, and absence of notice. There are some distinctions, however, between bona fide and innocent purchasers. The former may acquire title from his grantor free from certain undisclosed equities by which the immediate grantor was bound, provided such acquisition is without notice thereof. 43 Tex.Jur., p. 615, sec. 361. But in either instance "notice" is controlling. Ibid., sec. 362. "One who buys real property with actual notice of a claim of interest of a third person is not an innocent purchaser, although he pays a valuable consideration * * *." 43 Tex.Jur., p. 643, sec. 380.

▪ There can be little doubt that appellee was in "good faith" in an effort to acquire all interest in the 67¾ acre tract not owned by appellant. Appellee Benton testified substantially that he owned an abstract plant in the county and was familiar in a general way with land titles in the county; for some years Buchele and others had been offering to sell their interests in the land to him; he knew of its potential oil value and apprised appellant of it; he knew from appellant he was claiming an interest in the land; he had seen and read the recordation of appellant's deeds under which he claimed; appellee Benton did not consider appellant's deeds "regular" and doubted if they passed title to appellant. He undoubtedly had notice of appellant's claim of title. In such circumstances we think the record conclusively shows that even if appellee paid a valuable consideration for the conveyances from the heirs who had previously attempted to convey to appellant, he did not become an innocent purchaser as that term is known to the law. In all probability this finding of fact by the trial court to some extent influenced him in entering the judgment in the case. The assigned error is well taken.

Points 1, 5 and 7 assert error because: (1) The court found that the deeds from the Fowler heirs to appellant pertaining to the 67¾ acres were void; (5) the court found that the "deeds from Marvin E. Fowler * * * and W. R. Fowler to M. M. Gilbert (appellant) retained vendor's liens"; and (7) the court found "that the deed from W. R. Fowler to M. M. Gilbert retained vendor's lien."

▪ Appellee objects to us considering the first point because it is too general and presents no specific ground of error. The point is very general in that it asserts that the court erred in holding the deeds void under which appellant claims. We observe appellant's statement from the record and his arguments thereunder and from these we know definitely of what he complains. Under the provisions of Rule 418, TRCP, and the holding in Fambrough v. Wagley, Sup., 140 Tex. 577, 169 S.W.2d 478, we will consider the point.

The record shows that appellant claims under four deeds, namely, from W. R. Fowler, Marvin E. Fowler, Mary Estelle Jones (who conveyed to Marsh and Marsh to appellant), and Mrs. Goodgion, the former wife of J. R. Fowler, who was deceased at the time of trial. The court did not hold that either the Goodgion or Marsh deeds were void; he apparently recognized the Marsh deed as conveying the interest of Mary Estelle Jones. The trial court did find that the land was the separate property of J. R. Fowler, deceased; that Mrs. Goodgion was dead at the time of trial, and that appellant held no title by virtue of the previous deed from her. If his fact findings in these respects were correct, his holding of no title from Mrs. Goodgion was correct.

▪ The court found and so held that the deeds from W. R. Fowler and Marvin E. Fowler were void for two reasons: (1) because the respective descriptions of the interest conveyed in the land were insufficient, and (2) because the deeds retained vendor's liens, reserving superior title in grantors. We shall later refer to the second reason. We believe the court was in error in holding the Marvin E. Fowler deed void for indefiniteness in the description. In so far as the land involved in this suit is concerned, the description was as follows: "All that certain

tract or parcel of land situated in the County of Montague, State of Texas, and being described by metes and bounds as follows * * *. Fourth tract being 67½ acres of land out of the T. M. Stroud survey, Abstract No. 1421, situated in Montague County, Texas, and described as follows: * * *" (Here follows a full description by metes and bounds of the 160 acre T. M. Stroud survey "less 24½ acres described in Book 13, page 479, Deed Records, Montague County, Texas.") The description is followed by this language: "The interest herein conveyed being our undivided interest in the above tracts of land."

■ The chain of title shows that J. R. Fowler owned the north one-half of the 135½ acres of the Stroud survey; the last above quoted provision in the deed of conveyance to the effect that grantor was conveying his undivided interest in the described tract was a reference, sometimes referred to by the courts as a key, to which one could look and by which the instrument could be explained by extrinsic evidence to determine what land and interest therein was intended to be conveyed.

■ There are many cases to be found where the courts have held deeds and contracts concerning land "void" but in most instances the instruments were those where the burden of proof rested upon a party to establish his rights thereunder and the controversies were generally between strangers and not between grantor and grantee. In the instant case we have already indicated that appellee had full knowledge of the deed under discussion and was in no better position to urge its invalidity than the grantor would have had if the controversy had been between that grantor and this appellant.

■ The deed from W. R. Fowler to appellant (held void) in so far as it pertains to the land in controversy contains this description: "All that certain undivided interest in and to the following described tract of land situated in Montague County, State of Texas and described more particularly as being 67½ acres of land out of the T. M. Stroud survey, Abstract 1421,"

(then follows complete descriptive field notes of the T. M. Stroud 160 acre survey "less 24½ acres described in Book 13, page 479, Deed Records, Montague County, Texas.")

In the W. R. Fowler deed last referred to, it will be noted that it recites "all that certain undivided interest," etc. and is materially unlike the language used in the Marvin E. Fowler deed previously discussed. We think the court properly held the W. R. Fowler deed void for lack of description of the property conveyed. This because it does not contain any language which would furnish the requisite information to entitle one claiming under it to introduce extrinsic testimony to explain the intentions of the parties.

■ It is elemental that since our statutes require that a conveyance of real estate be in writing this requisite would be defeated if the courts were permitted to rely solely upon parol testimony to ascertain what land the writing applied to. The descriptions in such instruments may not thus be supplied, although they may be aided by extrinsic testimony if the latter is based upon the language used in the writing. "A deed must furnish the means of enabling the inquirer to determine with reasonable certainty what land was intended; where a deed fails to convey this information, it is void as a conveyance." 14 Tex.Jur., p. 986, sec. 200.

■ Extrinsic evidence to explain and make more definite the description in a deed is not admissible unless connected with the descriptive data found in the instrument. Ibid., p. 992, sec. 204.

"Generally speaking, the cases wherein it has been held by the courts that the description of the land is insufficient for the admission of extrinsic evidence are those wherein the land, as given, is an unidentified number of acres out of a larger tract. The methods of description by reference to a former deed or by recital of specific facts being usually unavailable to define the part severed from the larger tract, a deed purporting to convey a portion of the land comprised in a patent * * * and omitting to define what part is intended, pre-

sents a case of patent ambiguity, not susceptible of being aided by extrinsic evidence." Ibid., p. 996, sec. 208. For further discussion of the rule referred to by us, see Jones v. Carver, 59 Tex. 293; Masterson Irrigation Co. v. Foote, Tex.Civ.App., 163 S.W. 642, error refused; Carter & Bro. v. Ewers, Sup., 133 Tex. 616, 131 S.W.2d 86, 123 A.L.R. 908; Matney v. Odom, Tex.Sup., 210 S.W.2d 980; Higgins v. Bankers' Mortgage Co., Tex.Com.App., 13 S.W.2d 683.

The case of Easterling v. Simmons, Tex. Civ.App., 293 S.W. 690, error refused, cited and relied upon by appellant to support the validity of his deeds, recognizes the general rule that where a deed on its face furnishes sufficient means of identifying the land attempted to be conveyed it is sufficient although the county and state of its location is omitted.

Points 5 and 7 embraced in the group of assignments last discussed complain because the court found that a vendor's lien was retained in each of the deeds to appellant from Marvin E. and W. R. Fowler. We understand these assignments to complain because the court included those findings of fact along with his findings that the descriptions were too indefinite as reasons for holding each of the two deeds ineffective and void. The two mentioned deeds were introduced in evidence and each of them does contain the reservation of a vendor's lien in the usual and customary form. The trial court was in error in his fact findings that because of this retained lien the deeds were void. Counsel for appellee cites us to no authority in support of their effort to sustain the holding and we know of none. We think it unnecessary to elaborate further in this discussion as to why the reservation of a vendor's lien in a conveyance does not render it void. Again, since the trial court found as a fact and concluded that as a matter of law the reservation of the lien in connextion with other defects in the deeds rendered them void, it is quite obvious that he had these ideas in mind and was influenced thereby when he entered the judgment appealed from.

The second point assigns error in the finding of the court that appellant and M. J. Bone had not perfected title to the 67¾ acres by the statutes of five and ten years limitation.

We see no merit in this contention. The evidence was conflicting and the court found against appellant. We find sufficient evidence in the record to support the holding. The statutes relied upon by appellant are Articles 5509 and 5510, Vernon's Ann. Civ.St. In each of these provisions one of the requisites is "peaceable and adverse possession." In appellant's brief it is contended he perfected his title by the five year statute by paying taxes before they became delinquent from 1935 through 1940, both inclusive. There was in evidence a letter from appellant to E. J. Buchele, dated October 8, 1937, in which appellant said in effect that there was a party pasturing the lands in controversy and in the letter appellant said he had told the party that he (appellant) had not given him "or any one else possession of my interest in the place." In the letter appellant said in effect that he had such a small interest in the land he did not care to go to the expense of fencing it. As above stated, there is evidence of appellant to the contrary but the court discarded the conflicting evidence and we may not under the circumstances revise his action. 3 Tex.Jur., p. 1102, sec. 771; 17 Tex.Jur., p. 910, sec. 410.

Point 6 assigns error because the court found in his 27th finding that appellant agreed with appellee that he only owned and claimed an undivided ⅜ths interest in the 67¾ acres. The 27th finding contains the things complained of and many more, in reaching his conclusion that appellant was estopped, the court said: "And by reason of all the facts developed by the evidence," appellant was estopped to claim more than an undivided ⅜ths interest. "All of the evidence," of course, included the incompetent part. It is apparent that the court's judgment was based upon estoppel; we say this because there was no other theory presented by either party that would support the judgment entered. But as above pointed out, we are driven to the

conclusion that the incompetent testimony to which we have referred, which, upon motion of appellant, the court refused to "strike" when the attorneys had finished their testimony, probably entered into the court's final conclusion of estoppel. The testimony upon another trial may be different, and certainly the incompetent testimony will not be before the court, or jury if one should be had. For these reasons we think it improper to express an opinion at this time on the issue of estoppel, as found by the court in the judgment appealed from.

Adverting to appellee's motion to tax appellant with the cost of including unnecessary matters in the record, we note that no request was made by appellant as to what should be included in the transcript, as required by Rule 376, TRCP. The rules enjoin cooperation by attorneys in shortening records. Rule 370. We find in the transcript waivers of citation by parties who appeared and answered through attorneys covering 5 pages; subpoenas for witnesses, 1 page; citation for parties who appeared and answered, 22 pages, aggregating 28 pages. The cost of compiling a transcript is 50¢ per page and under Rules 382 and 448 we tax appellant with $14 costs in this appeal and the remainder of the costs is taxed against appellee.

Appellee has itemized other costs which he claims should be taxed against appellant if the case is reversed; such as citations to those against whom default judgment was taken, but we decline under Rule 239, TRCP, and Massie Drilling Co. v. Nees, Tex.Com.App., 266 S.W. 504, to charge appellant with this cost.

Appellee also complains of citations to minors but these items we refuse because of the holding in DeProy v. Progakis, Tex.Com.App., 269 S.W. 78; Morris v. Drescher, Tex.Civ.App., 123 S.W.2d 958, writ refused.

With these observations, the appeal attempted by the fifteen defendants other than Gilbert is dismissed and the judgment of the trial court is reversed and the cause remanded to the trial court for another trial.

Reversed and remanded.