### W. J. CROOM v. MILTON E. WINSTON ET AL.

Delivered January 5, 1898.

**1. Judgment Against Executor—Pleadings as Evidence.**

The pleadings may be read in connection with a judgment which prima facie makes the defendant personally liable, to show that the suit was against defendants as executors, where a sale under such judgment was attacked more than twenty-five years after it was made.

**2. Same—Not Held a Personal Judgment, When.**

A sale under execution of the property of an estate on a judgment rendered four years before the sale, describing the judgment defendants by name, with the addition of the words "executor" and "executrix," will not be set aside as illegal and void more than twenty-five years thereafter, on the ground that the judgment was rendered against the executor and executrix individually, unless it is clearly shown that the execution was issued without authority of law.

**3. Same—Parol Evidence to Show Its Character.**

Evidence of an executor that a suit against him and his coexecutor was to recover from the estate a debt due from their testator in his lifetime is admissible where a sale under execution issued on the judgment is attacked twenty-five years thereafter, although he states that he does not remember whether he had ever read the petition in the case or not, and he can not give its contents.

**4. Same—Directing Execution.**

A judgment against executors in their representative capacity need not direct that execution issue against the property of the estate of their testator; and Paschal's Digest, article 1371, making it the duty of the clerk to issue an execution against the estate when the judgment is against the executor, does not necessarily require that there be such recitation in the judgment.

ERROR from Matagorda. Tried below before Hon. T. S. REESE.

*G. P. Dougherty,* for appellants.

*Brooks & Sparkman,* for appellees.

PLEASANTS, ASSOCIATE JUSTICE.—This suit was instituted by appellants against appellees for the recovery of the James Moore league of land, situated in the county of Matagorda. Both the plaintiffs and the defendants claim from a common source. The land in controversy was,

at the time of his death, the community property of A. C. Horton, late of Wharton County, and his wife Eliza.   A. C. Horton died testate in the year 1865 or 1866.   By his will he bequeathed to his wife all of his real property for and during her life, and at her death, to his only children, his son Robert J. W. Horton and Mrs. Patience L. T. Dennis, the wife of I. N. Dennis, in equal moieties share and share alike.   He appointed his wife, Eliza Horton, and his son-in-law executrix and executor of his will, and directed that no action should be had in the probate court in the administration of his estate, other than the probating of his will and the filing of an inventory.   This will was duly probated in the County Court of Wharton, on the 27th of August, 1866.   Mrs. Dennis died in 1863, leaving only one descendant, a daughter, Lida T. Dennis, who intermarried with the plaintiff W. J. Croom, and who died in 1880, leaving surviving her only two children, Lida Dennis Croom, the wife of plaintiff J. F. Hodges, and Horton Fry Croom, who died in infancy on the 20th of June, 1867.   Mrs. Eliza Horton, in her own right, and not as executrix of the will of her husband A. C. Horton, and her son R. J. W. Horton, conveyed the land in controversy to John and William Brady.   The defendants claim title to the land sued for under this deed, and under a sale thereof made by the sheriff of Matagorda County under a writ of execution issued upon a judgment, which will be hereafter recited; and the plaintiffs' claim is made under the will of A. C. Horton, and by inheritance through Mrs. Croom and her deceased son, Horton Fry Croom, from Mrs. Dennis.   The judgment under which the land was sold is in these words:

"Plunkett & Russell (No. 668) vs. Eliza Horton, extx., I. N. Dennis, extr., of A. C. Horton, dec'd.

"This case being called for trial this 24th day of April, 1868, the parties appeared by their attorneys, viz., John W. Harris for the plaintiff, and Quinan & Whitten for the defendants.   And waiving a jury and all errors, submitted the case to the court on the merits.   And the court having heard the evidence, it appearing to the satisfaction of the court that the plaintiffs have fully established their demands, it is hereby ordered and adjudged that the said plaintiffs have and recover of said defendants the sum of forty-nine and thirty-four hundredths dollars, with interest thereon at the rate of ten per cent per annum from date hereof, until paid.   And also the further sum of six thousand seven hundred and twenty-seven 62-100 dollars ($6727.62), with interest thereon at the rate of twelve per cent per annum from date hereof until paid, together with all costs of the said plaintiffs in this suit.   And by the consent of the parties, it is further ordered that no execution shall issue herein before the first day of November next, 1868."

The execution which was levied on the land, was issued from the clerk's office of the District Court of Wharton County on the 24th of September, 1872, and recites, that "on the 24th day of April, 1868,

Plunkett and Russell recovered a judgment in cause 668 against Eliza Horton, executrix, and I. N. Dennis, executor, of A. C. Horton, deceased, for $6727.62, with interest," and then commands the sheriff of Matagorda County, "that of the goods and chattels, lands and tenements of the said estate of A. C. Horton, deceased, in the hands of Eliza Horton and I. N. Dennis, that he cause to be made the full amount of said judgment, interest, and costs of suit." The return on this writ shows a sale of the property in controversy by the sheriff of Matagorda County, on the 5th of November, 1872. It having been shown that all of the pleadings in cause No. 668 had been lost for many years, I. N. Dennis, the executor of the will of A. C. Horton, testified, over the objections of the plaintiffs, that he and Mrs. Horton were sued by Plunkett and Russell in said cause for the recovery of a debt due from the estate of their testator, and for that debt the judgment above recited was rendered; and not against himself and Mrs. Horton for any debt or liability of theirs. That the suit against himself and Mrs. Horton was for a debt due to the plaintiffs by their testator, A. C. Horton, and not for a debt due by either of them, the witness was positive; but he did not remember whether he ever read the petition in the case or not, and if he ever did he could not then state its contents. The judgment and execution were both admitted in evidence over the objections of the plaintiffs, and to the admission of each, as well as to the admission of the testimony of the witness Dennis, plaintiff took a bill of exceptions. It being admitted by the plaintiffs that the defendants had whatever title passed to the land in controversy, under the deed to John and William Brady, and by the sale under execution, the trial judge directed a verdict for the defendants, which being done, judgment was rendered that the plaintiffs take nothing by their suit, and that the defendants go hence without day. A new trial being refused defendants they excepted and appealed to this court. After deliberate consideration of the appeal as presented in the able brief of the appellants' counsel, we are of the opinion that the judgment should be affirmed. And in giving our reasons for the conclusion we have reached, we will consider the more salient points in the objections made by the appellants to the evidence offered by appellees in support of their claim of title, and admitted by the court. The judgment of Plunkett and Russell against Mrs. Horton and I. N. Dennis, rendered on the 24th of April, 1868, it is urged by appellants, is a judgment against the defendants in their individual capacity, and not in their representative capacity; that the words "executrix" and "executor" following the names of the defendants are but words of personal description, and that the judgment makes the defendants liable de bonis propriis and not de bonis testatoris; and that therefore the judgment will not support the execution issued under it, against the property of the estate of A. C. Horton, deceased, in the hands of the defendants, the executrix and executor of the deceased's will; and it is further objected, that it is not permissible to show from the pleadings, or by any evidence dehors the minutes of the court, that the suit

was against the estate of the defendants' testators and not against the defendants; and that the judgment made defendants liable de bonis testatoris and not de bonis propriis. These objections to the introduction of this judgment, as a link in the defendants' claim of title, are presented by counsel with much force, under various assignments, and many propositions; and if these objections be valid, the judgment appealed from should be reversed. That judgments rendered in manner and form identical with the one we are considering, have in this and many other jurisdictions been held to be judgments against the defendants, and not against the property of the estate of their testator or intestate, can not be denied. But if it has ever been held by any respectable court, that under no circumstances can it be shown by evidence dehors the minute of the judgment, that such judgment was rendered against the executors or administrators, in their representative capacity and not against them individually, we are not aware of such decision.

We can readily understand, where execution has been issued upon such a judgment, against the property of the executor or administrator, and his property sold, that in a suit between the executor and the purchaser of the property the former should not be heard to say that the judgment against him was de bonis testatoris, and not de bonis propriis. Executors sometimes by their conduct make themselves personally liable to the creditors of their testator, and when this is the case, the judgment would impose a liability de bonis propriis although the suit was against the defendant in his fiduciary capacity; and it is ever the policy of the law to uphold judicial sales, unless they are plainly illegal. In this suit, the plaintiffs are assailing as illegal and void a sale made more than a quarter of a century ago, under an execution issued against the estate of their great grandfather, upon a judgment rendered some four years before the sale, against the executors of the independent will of their ancestor. Under such a state of facts, it must be clearly shown that the execution was issued without authority of law, before a court of justice would be authorized to pronounce the sale void. If, as has been decided by our Supreme Court (see Dunlap v. Southerland, 63 Texas, and authorities there cited), the pleadings in a suit may be examined for the purpose of ascertaining whether the judgment was authorized against the defendant in favor of the party designated as plaintiff in the minute of the judgment, why may not a judgment, which upon its face is ambiguous, be read in the light of the pleadings, for the purpose of explaining and making clear that which is ambiguous? If resort can be had to the pleadings in the one case, for the purpose of showing that a judgment which upon its face was valid was in fact a nullity, we think the pleadings may be read in connection with a judgment which prima facie makes the defendant personally liable to the plaintiff, to show that the plaintiff's suit was not for such purpose, but for the purpose of obtaining a judgment against the property of the estate of the defendant's testator in the possession of defendant. More cogent reasons might be presented, it seems to us, against resorting to the pleadings for the purpose per-

mitted in the case of Dunlap v. Sutherland, supra, than could be urged against resorting to them in this case, for the purpose we have indicated. To interpret and construe the legal effect of the judgment in the light of the pleadings in any case, is neither an attack upon nor an amendment of the judgment, as counsel seems to consider. If the pleadings, as shown to be the case in cause No. 668, have been destroyed or lost, parol evidence is admissible to show what the pleadings contained. At the time of the trial of this cause, all of the parties to the suit of Plunkett and Russell v. Mrs. Horton and I. N. Dennis, save defendant Dennis, as well as the counsel in the cause, and the judge and the clerk of the court which tried that cause, were dead, and we think the positive testimony of Dennis to the effect that the suit was to recover against the estate of A. C. Horton, deceased, a debt due by the defendant in his lifetime to the plaintiffs, and not for the recovery of any debt due by the witness or his codefendant, was admissible, notwithstanding the declaration of the witness that he did not remember whether he had ever read the petition in the case or not, and if he had he could not then give its contents, to prove what the pleadings in that suit contained. Under the circumstances of this case it was permissible to show by circumstantial evidence what the pleadings in cause No. 668 were. If the object of the suit was to subject property of the estate of A. C. Horton, deceased, in the hands of his personal representatives, to the payment of a debt due by him at the time of his death to plaintiffs, the inference is, that the pleadings were framed with the view to accomplish the purpose of the plaintiffs. If then the judgment was against the defendants, Dennis and Mrs. Horton, in their representative capacity, it would support the execution under which the land in controversy was sold, and it was not essential that the judgment should direct that execution should issue against the property of the estate of the defendants' testator. The statute, article 1371, Paschal's Digest, made it the duty of the clerk to issue an execution against the estate when the judgment was against an executor. If, as insisted by appellants, no execution could issue against the property of the estate of a decedent in the hands of his executor, upon a judgment against the executor, unless the judgment expressly so directs, why the necessity for article 1371? Why need the Legislature direct the clerk to do that which the judgment by its express terms commands to be done? We are not prepared to adopt the appellants' interpretation of this article. We are inclined to the opinion that the purpose of the Legislature was something more than merely to authorize the issuance of an execution against the property of an estate upon a judgment against an executor of an independent will. One purpose of the statute would seem to be to instruct the clerk as to his duty, where the judgment was, in the language of the statute, "against the executor," without directing the issuance of an execution. The object of the statute was doubtless to meet and obviate the very objection which appellants are urging to the judgment and execution, upon which appellees relied to support their claim of title upon the trial of this cause. Be-

lieving that the court did not err in overruling appellants' objections to the admission in evidence of the judgment in cause No. 668, nor the execution issued thereon, and under which the land in controversy was sold, nor the sheriff's deed to the purchaser, the judgment is affirmed.

*Affirmed.*

Writ of error refused.