**SIAS et ux. v. BERLY.**

No. 4646.

Court of Civil Appeals of Texas.
Beaumont.

Oct. 19, 1950.

Rehearing Denied Sept. 14, 1951.

Second Motion for Rehearing Denied
Jan. 23, 1952.

E. W. Easterling, Beaumont, for appellants.

Marcus & Weller, Beaumont, for appellee.

WALKER, Justice.

This suit was brought to set aside a sale of land, to-wit, Lot 7, Block 12, McFaddin 2nd Addition to the City of Beaumont, which was made under an execution issued upon a judgment of the County Court at Law of Jefferson County. Appellants, Mr. and Mrs. John M. Sias, were the plaintiffs, and appellee Berly was the sole defendant, and the parties will be styled hereinafter as they were in the trial court.

Plaintiffs alleged various grounds for setting aside the execution sale. They charged, among other matters, that the judgment upon which the execution issued was dormant. In reply, defendant plead a revivor of the judgment by scire facias, and filed a cross action in trespass to try title. Plaintiffs filed a supplemental petition, but this need not be described.

The execution sale under attack occurred on June 6, 1939. Plaintiffs' original petition was filed on February 13, 1940, some eight months afterwards. Plaintiffs amended their petition on December 3, 1947, and tried the cause under the amendment.

The cause was tried to the court sitting without a jury, and the trial court rendered judgment in behalf of defendant Berly that plaintiffs take nothing of the defendant, and that defendant, on his cross action, recover of plaintiffs the title to and the possession of the land in suit. From this judgment plaintiffs have appealed.

At the request of plaintiffs, the trial court made original and supplemental findings of fact. Plaintiffs have filed a statement of facts. The findings and the proof consistent therewith show the following matters:

The judgment of the County Court at Law was rendered on July 13, 1932, in behalf of Ogden Johnson as Receiver of Edson Hotel Operating Company, against Mrs. Birdie Eastham, a feme sole. Mrs. Eastham married John M. Sias on May 6, 1933, and she and her husband are the plaintiffs in this suit.

On April 25, 1935, Ogden Johnson, as said receiver, assigned the judgment to defendant Berly by a written transfer. The document of transfer provided that defendant Berly should have "full authority to demand and receive the same (meaning, the proceeds of said judgment) to his own use, and upon payment thereof, or any part thereof, to give discharge for same." Assignor Johnson provided further in this transfer that "I authorize said—Berly, in my name, but at his own cost and charge to

sue out execution and all other legal process for the enforcement of said judgment."

No execution was issued upon the judgment within the year which was prescribed by Article 3773, R.S.1925, prior to the amendment of that statute in 1933, Vernon's Ann.Civ.St. art. 3773; and on September 2, 1938, by a document filed in the original cause, defendant Berly instituted scire facias proceedings to revive the judgment. Plaintiffs were non-residents of Texas at this time, but on October 3, 1938, a non-resident notice and a writ of scire facias to plaintiffs (not to Mrs. Eastham but to plaintiffs), issued under this motion and were served upon plaintiffs in person in Pennsylvania on October 7, 1938. Answer day in both notice and writ was November 7, 1938, but no answer was filed and no appearance was made by plaintiffs; and on said answer day, the court passed an order as by default, providing "that said judgment of date July 13, 1932 be and the same is hereby in all things revived, and let execution issue herein." No appeal was taken from this order of revivor.

Subsequently, to-wit, on April 10, 1939, an execution was issued upon the original judgment of July 13, 1932, and was delivered to the sheriff of Jefferson County; and at the request of defendant Berly, made by letter dated May 6, 1939, was levied by the sheriff upon the land in suit, namely, Lot 7, Block 12, McFaddin's 2nd Addition to the City of Beaumont. On June 6, 1939, sale was made to defendant Berly under this writ and levy for $382.96; and upon defendant Berly's payment of this sum to him, the sheriff delivered a deed to said defendant conveying said property.

The execution of April 10, 1939, was the only writ of execution issued under the original judgment of July 13, 1932, or under the subsequent order reviving said judgment.

Defendant Berly was the only person who attended the execution sale, but according to findings made by the trial court, to which plaintiffs have filed no exception, this sale was duly advertised and was made in accordance with law, and due notice of said sale was given plaintiffs but plaintiffs did not attend the sale and did nothing to pro-tect their interests in the property to be sold. The trial court found further:

"That said Charles L. Berly did no act or thing which in any way prevented said plaintiffs, John M. Sias and Birdie Eastham Sias, or either of them, from protecting their interest in said property."

"That there was no confidential relationship whatever between said Charles L. Berly and said John M. Sias and Mrs. Birdie Eastham Sias and there was no element of fraud, misconduct, accident or mistake in connection with said sale, nor was there any other cause which in any way prevented said plaintiffs from protecting their interest in said property."

On the date of the execution sale, June 6, 1939, the "actual market value" of the land in suit was $3500. Taxes then chargeable against the property amounted to "approximately $750", and there was of record a judgment against the plaintiff Mrs. Sias for $32.00, with interest from 1932. A judgment for $591.25 was also of record against her, but this judgment had actually been discharged by proceedings had in another suit.

As stated, defendant Berly paid $382.96 for the property at the execution sale but of this sum $346.01, the total amount of principal and interest then due upon the judgment of July 13, 1932, was paid in a manner which amounted to crediting that sum upon said judgment. The balance of defendant Berly's bid evidently represented costs. The trial court made the following findings respecting defendant Berly's payment: "That at the time of the Sheriff's sale on June 6, 1939, Charles L. Berly paid the Sheriff his check for $382.96, which was the amount of his bid and the amount of the judgment and costs in Cause No. 10364. That thereafter the Sheriff issued his check payable to Ogden Johnson receiver of Edson Hotel Operating Company for $346.01 the amount of the judgment and interest thereon in Cause No. 10364, and that Ogden Johnson endorsed said check as receiver of Edson Hotel Operating Company and delivered the same to Charles L. Berly and that Charles L. Berly then deposited the check to his, Charles L. Berly's account in the bank."

The trial court also found as a matter of fact that the price paid by defendant Berly was not so inadequate as to require that the execution sale be rescinded, and that "there was nothing in the proceedings had with respect to said judgment, the issuance of execution thereon and the sale of said property which would tend to discourage or prevent bidders from bidding therefor."

The property levied upon and sold under the writ of execution was at all relevant times prior to the execution sale the separate property of the plaintiff Mrs. Sias, formerly Mrs. Eastham. There is nothing to show that the property was improved or that it was the source of any income to plaintiffs.

The appeal is adjudicated upon the following conclusions:

(1) Under the provisions of Article 3773, R.S.1925, which were in force prior to the date when that statute was amended in 1933, the original judgment would have become dormant twelve months after its date because no execution issued thereupon within that twelve month period (although under Art. 5532, R.S.1925, an action of debt could have been maintained upon it). Plaintiffs say that the judgment did become dormant under this form of Art. 3773 because no execution issued within a year and that the judgment remained and was dormant when the execution of April 10, 1939, was issued upon said judgment. We proceed to discuss the several arguments made by defendant Berly in refutation of this contention.

(2) Article 3773 was amended in 1933 by Chapter 144, page 369, Acts of the 43rd Legislature, which is now in force, and which provides that a judgment shall become dormant if an execution is not issued within ten years (instead of twelve months) after rendition. This amendment was approved on May 18, 1933, less than a year after the date of the judgment of July 13, 1932, and defendant Berly says that the amendment became effective on the date of approval, namely, May 18, 1933, and that the judgment of July 13, 1932 never became dormant because the execution issued on April 10, 1939, within the ten year period prescribed by the amendment.

This argument is overruled because the amendment was not passed by a two-thirds vote of all the members elected to the Legislature, as required by Article 3, Section 39, of the Texas Constitution, Vernon's Ann.St. The amendment was enacted pursuant to a conference committee report, and this report was adopted by the House of Representatives by vote of 84 to 28, which was a two-thirds vote of the members present voting; but since the House membership presumably numbered 150, it was not a two-thirds vote of the persons elected to membership in the House of Representatives. At the foot of the amendment, as it is printed in the general laws of the 43rd Legislature, by authority of the State, appears the statement: "Effective 90 days after adjournment", and we find this to be correct under the facts stated. The trial court actually found that the bill was passed by a vote of two-thirds of the members elected to said Legislature; but the finding shows that it was based on "the text of the official laws published by the Secretary of State" and we construe that text as showing only the votes cast for and against the passage of the bill. There is no dispute between the parties concerning the evidence to be considered.

The amendment of Article 3773 thus did not become effective until 90 days after June 1, 1933 which was the adjournment date, that is, until a day in September, 1933; and the judgment of July 13, 1932 therefore did become dormant under and by virtue of the provisions of Article 3773 which were in force until the amendment took effect.

(3) Defendant Berly says that if this conclusion is correct, then the amendment of Art. 3773 must be applied to judgments dormant when the amendment took effect, as well as to those not dormant at that time, because the amendment ought to be construed as regulating a procedural matter and as intended to have a remedial effect.

This argument, if adopted, would raise a question as to whether judgments barred by Article 5532, R.S.1925, would be

revived as well as those already dormant under the original terms of Article 3773; but we overrule the argument on these grounds: Whether the amendment is to be construed as referring only to judgments not dormant when it took effect, or, as well, to judgments then dormant, depends upon what the legislature intended; and from our construction of Chapter 144, as finally passed and approved, we conclude that the amendment was only intended to regulate judgments not dormant when it took effect and that it was not intended to revive judgments already dormant. For instance, the object of the Bill is to prescribe when judgments shall become dormant. Consider these details: The preamble uses the words "will not *become* dormant"; the first sentence of the amendment uses the words: "judgments *shall become* dormant"; the emergency clause refers to unnecessary costs and expenses as incidents of the statute which is being amended. We construe the Bill as showing its object to be a prescription fixing the time when judgments shall *become* dormant; and revival of a judgment already dormant is not within the scope of this object.

We think that the 1933 amendment of Article 3773 was intended to apply and does apply only to judgments which were not dormant when the amendment took effect. It was assumed in the following decisions that this was the proper construction, and the judgments in said decisions are thus some authority for our conclusion. See: Stanford v. Dumas, Tex.Civ.App., 137 S. W.2d 1071, and Commerce Farm Credit Company v. Ramp, Tex.Civ.App., 116 S. W.2d 1144, at pages 1152–1153, affirmed sub. nom. Commerce Trust Co. v. Ramp, 135 Tex. 84, at page 92 (Hn. 6), 138 S.W.2d 531.

(4) Defendant Berly says finally that if the judgment of July 13, 1932 became dormant under the original provisions of Article 3773, and that if it was not revived by the 1933 amendment of that statute, all as we have held, then said judgment was revived by the scire facias proceedings of 1938. In response, plaintiffs make several contentions which are now to be discussed.

The scire facias proceedings were commenced on September 2, 1938, by the written application of defendant Berly, complaining of the present plaintiffs and addressed to the court which rendered the judgment of July 13, 1932. When this application was filed, the present plaintiffs were domiciled in Pennsylvania; but under defendant Berly's application two forms of civil process were issued on October 3, 1938, to-wit, a writ of scire facias and a non-resident notice, both addressed to plaintiffs, and this notice and writ were served upon the present plaintiffs, in person, in Pennsylvania on October 7, 1938; and thereafter on November 7, 1938, which was the answer day named in these two writs, the court in which defendant Berly's application was pending passed an order reviving its original judgment of July 13, 1932, and authorizing the issuance of execution. No other relief was awarded by this order.

It seems to be plaintiffs' position that defendant Berly's application of September 2, 1938 was really a petition commencing a suit for debt upon the original judgment of July 13, 1932. This contention is overruled; we construe the application as a motion in scire facias to revive the judgment of July 13, 1932; and this construction accords with, and is therefore supported by the process issued under said application and with the order of revival adjudicating said application. See the following decisions on the construction of Berly's application: Carey v. Sheets, Tex.Civ.App., 218 S.W.2d 881; City National Bank v. Swink, Tex. Civ.App., 49 S.W. 130; Burge v. Broussard, Tex.Civ.App., 258 S.W. 502, at page 505; Bludworth v. Poole, 21 Tex.Civ.App. 551, 53 S.W. 717; Robertson v. Coates, 65 Tex. 37.

Plaintiffs say that the order of November 7, 1938, reviving the original judgment of July 13, 1932 was void because it is to be classed as a judgment in personam against non-residents, founded wholly upon service of civil process beyond the limits of this state. This construction is overruled; upon the grounds hereinafter stated we hold that the service of the writ of scire facias and the non-resident notice,

dated October 3, 1938, upon plaintiffs in the state of their domicile, to-wit, Pennsylvania, was effective and that the court which passed the order reviving the original judgment had jurisdiction so to do, at least to the extent necessary to support an execution sale of the land in suit.

As has been stated, the revival proceedings of 1938 were in scire facias and were not an independent suit for debt upon the original judgment of 1932. Whether service of process iﬂ scire facias to revive a valid but dormant judgment for debt, made upon the party liable under that judgment who is, when served, beyond the limits and a non-resident of this state, will support an order reviving the dormant judgment has not been clearly decided in this state.

In Collin County National Bank v. Hughes, 110 Tex. 362, 220 S.W. 767, 768, suit was brought upon a judgment for debt rendered by a federal court in Colorado; this judgment had purportedly been revived against Hughes, a Texas citizen, by a scire facias begun in said federal court more than 10 years after the judgment was rendered. A writ of scire facias was served upon Hughes in person while he was within, and a resident of, the State of Texas. The court held that the trial court correctly rendered judgment for Hughes. They stated the different opinions concerning the nature of scire facias to revive such a judgment for debt, that is, the view that scire facias was only a continuation of the original suit and the view that it was a new suit; but they did not decide whether the scire facias proceeding before them was of the one sort or the other. For that was unnecessary; if the scire facias was a continuation of the old suit, it was barred by Article 5691, R.S.1911, now Article 5530, R.S.1925, before the suit on appeal was filed; and if the scire facias amounted to an independent suit, the service of process made upon Hughes did not give the Colorado federal court jurisdiction over Hughes.

The following language of the court shows that the conclusion, whether the particular scire facias proceeding is a continuation of the original suit or is an independent suit, has had the effect of incidentally determining whether service upon a non-resident of notice of the scire facias gave jurisdiction to revive a judgment for debt: "In the Federal Courts the proceeding by scire facias for the revival of a personal judgment is treated as merely a continuance of the original suit. Where the proceeding is so considered there are holdings that jurisdiction duly obtained in the original suit over the person of the defendant will endure for the revival of the judgment, and the giving of reasonable notice to him will support the judgment of revivor. Comstock v. Holbrook, 82 Mass. [16 Gray 111] 111, is such a decision. But in such cases, the judgment of revivor does not become the judgment. It merely revives the judgment—restores it to its original force. An action upon the judgment thus revived is necessarily upon the original judgment, and limitation in such an action must be determined according to the judgment's original date.

"Where the scire facias proceeding for the revival of a judgment is not so treated, its character is simply that of an independent action for debt—a new suit; and the power to render judgment in the proceeding must depend upon jurisdiction over the person of the defendant as in any other suit."

In Ferguson-McKinney Dry Goods Co. v. Garrett, 235 S.W. 245, the Court of Civil Appeals seems to have construed the foreign revival proceedings before them as amounting to an independent suit, and that, as a consequence, notice of this proceeding made by publication did not confer jurisdiction to revive the judgment. However, it is not entirely clear to us that this opinion is to be construed as holding that the particular scire facias proceeding now before us is an independent suit, because the opinion leaves us in some uncertainty as to whether the foreign revival proceedings were only in scire facias or actually amounted to an independent action for debt. The foreign revival proceedings were not in the record, and the information concerning these proceedings seems to have been taken from the parties' pleadings and from the briefs. The date when the foreign revival proceeding was filed is not stated; and a quotation made from Garrett's brief

indicates an argument that the revival proceeding was barred by limitation; and some of the Court's language indicates that the Court used "dormant" of the judgment as meaning barred in the sense in which Article 5530 and Article 5532 prescribe, as distinguished from the sense prescribed by Article 3773, R.S.1925, prior to the amendment of 1933. Usage of "dormant" similar to that made by the Court of Civil Appeals was clearly made on appeal by the Commission of Appeals; see their opinion in Ferguson-McKinney Dry Goods Co. v. Garrett, 252 S.W. 738, at page 740. The Court of Civil Appeals apparently held that the suit against Garrett on the judgment was barred by limitation and also apparently held that service by publication did not support the foreign judgment of revival. The Commission of Appeals reversed the judgment of the Court of Civil Appeals and remanded the cause to the trial court. In so doing they held that the *original* judgment had never become "dormant" or barred by limitation; and this holding necessarily obviated any question concerning a revival of said judgment. Nevertheless, before proceeding to this holding, they remarked: "We think it (that is, the Court of Civil Appeals) correctly held that the revivor proceedings were not binding upon Garrett". This statement was dictum because, as we have stated, the foreign revival proceedings were immaterial under the holding actually made. Furthermore, the Commission never stated *why* they thought the revival proceeding not binding. We note that the Supreme Court did not adopt the Commission's opinion; they approved only the Commission's "holding", and the Commission made no "holding" upon the validity of the revival proceeding. Under the circumstances, we do not regard the Commission's opinion in Ferguson-McKinney Dry Goods Co. v. Garrett as a binding authority determining the nature of the revival proceedings and settling the question of jurisdiction now before us.

In Schluter v. Sell, 194 S.W.2d 125, 128, the Austin Court of Civil Appeals held that service in Texas upon a Texas resident of a notice issued by a California court under a motion for leave to procure execution against the person served, upon a valid but dormant judgment for debt by that court, would have vested the California court with jurisdiction to grant such relief. In other words, the Texas Court would have given full force and effect to the order made by the California court granting leave to procure execution although it was founded upon service of non-resident notice. The Court of Civil Appeals first stated the California rule of decision regarding the nature of the California proceeding for execution; the California courts had held this proceeding to be, not a new suit but only "a subsequent step in an action already adjudicated but barred by the operation of other statutes of limitation." The Court of Civil Appeals then referred to Collin County National Bank v. Hughes, supra, and to the rule of decision stated therein, under which the service of such a non-resident notice *does* vest jurisdiction to revive the judgment because the proceeding is regarded as only a step taken in the original suit, and held: "The giving of such notice is all the California statute required, and the giving of such notice (issued out of the California court) to appellant in Texas would have been sufficient to support the judgment of revivor, or for execution of the judgment."

The decision of the Austin court does not, of course, determine whether scire facias in Texas to revive a judgment for debt which had become dormant under the former terms of Article 3773, R.S.1925, because an execution had not issued within 12 months after rendition, is an independent suit or is only a continuation of the original suit; and to that question, which is determinative here, we now turn.

Before stating our conclusions it is necessary to define more precisely the issue before us. It is first to be noted that the judgment of July 13, 1932, which the scire facias proceeding of 1938 purported to revive, was an actual debt of the plaintiff Mrs. Sias, formerly Mrs. Eastham, that is, the valid subsisting, binding and legally enforcible obligation of Mrs. Sias, and that it was not the debt of Mrs. Sias' husband. Although dormant in one sense, it was enforcible by an action of debt. Article 5532,

R.S.1925. It is to be noted further that while Mrs. Sias' husband was *not* a party to the original judgment of July 13, 1932, and that while he *was* a party to the scire facias of 1938, nevertheless the scire facias proceedings expressed no intention of making this debt a personal liability of Mrs. Sias' husband, and that the order adjudicating the scire facias proceeding did not purport to make this debt a personal liability of Mrs. Sias' husband. That order only revived the original judgment of July 13, 1932, and authorized the enforcement thereof in a particular way, namely, by writ of execution. Finally, if we ought to make any assumption that the law of Pennsylvania concerning liability of property acquired by the plaintiffs Mr. and Mrs. Sias during marriage for the ante-nuptial debts of Mrs. Sias is the same as that of Texas, then it is to be noted still further that defendant Berly has never attempted to collect the original judgment out of property acquired by Mr. and Mrs. Sias during their marriage; instead, Berly only attempted to collect the judgment out of property which belonged to the separate estate of Mrs. Sias. (Concerning liability of the marital community for an ante-nuptial debt of a spouse, see Spears Law of Marital Rights in Texas, Sec. 385). Thus it is plain that Mrs. Sias' husband, although not a party to the original judgment of July 13, 1932, was wholly a formal party to the scire facias proceeding of 1938, and to the order adjudicating that proceeding, and to the writ of execution and the sale thereunder which plaintiffs have attempted to set aside. No personal liability respecting the original judgment of July 13, 1932, was imposed upon Mrs. Sias' husband, or was attempted to be imposed upon him, or upon any property which belonged to him or to the marital estate of himself and Mrs. Sias, (if there was such an estate) and there was no evidence that the property levied upon and sold in satisfaction of the judgment would have produced any income in which Mrs. Sias' husband could have participated. Furthermore, while costs must have been charged for the scire facias proceeding, the order reviving the judgment did not adjudge costs against any person. We therefore conclude that we may disregard the fact that Mrs. Sias' husband was a party to the scire facias proceeding, and that we may treat this proceeding as if it involved only the original parties to the judgment.

We hold that the scire facias proceedings of 1938 were but another step taken in the original suit in which the judgment of July 13, 1932 was reduced.

A scire facias proceeding to revive a valid but dormant judgment for debt had between the parties to the judgment, has sometimes been treated as if it was an independent suit and sometimes as if it was only a continuation of the original suit; and the dual nature of the proceeding has been specifically mentioned in some of the decisions cited hereinafter. In the following cases the proceeding was treated as an independent suit: (1) McFaddin v. Lockhart, 7 Tex. 573, applying to scire facias the general statute which required a statement of the facts proved to be made up and filed in causes adjudicated under citation by publication; (2) Coleman v. Zapp, 105 Tex. 491, 151 S.W. 1040, applying to scire facias the general statute authorizing an attachment to issue in certain actions.

However, in other cases the proceeding has been treated as if it was only a continuation of the original suit; and in some of these cases, it has been specifically so described and the jurisdiction of the trial court to hear and determine it has been placed upon that ground. Thus in Perkins v. Hume, 10 Tex. 50, the court held that the general venue statute was not applicable to scire facias between the original parties to revive a dormant judgment for debt because the proceeding was to be treated as only a continuation of the original proceeding, which thus had to be commenced in the court in which the original suit was filed. This holding has been consistently followed. See: Masterson v. Cundiff, 58 Tex. 472; Schmidtke v. Miller, 71 Tex. 103, 8 S.W. 638; Carey v. Sheets, Tex.Civ. App., 218 S.W.2d 881. It is held, on the same ground, that a suit to revive a judgment of the Supreme Court or of a Court of Civil Appeals must be commenced in the original trial court. Carothers v. Lange, Tex.Civ.App., 55 S.W. 580; Henry

v. Red Water Lbr. Co., 46 Tex.Civ.App. 179, 102 S.W. 749. And see: City National Bank v. Swink, Tex.Civ.App., 49 S.W. 130, holding that in scire facias the trial court could revive the original judgment even as against the receiver of a United States bank which had been a party to the judgment, but could not adjudicate the force and effect of the judgment as against the ·receiver.

By way of contrast, *debt* on a judgment is held to be an independent suit under the venue statute. Johnson v. Skipworth, 59 Tex. 473. And being an independent action, it can be filed in any court having jurisdiction of the defendant. Burge v. Broussard, Tex.Civ.App., 258 S.W. 502.

Consistently with the decisions holding that the venue statute did not apply to scire facias, it is also held that the former statute requiring a suit to be commenced by petition was not applicable to scire facias because the proceeding was not an independent suit, and that it might be commenced, indeed, either by a motion or by the issuance and service of a writ of scire facias. Hopkins v. Howard, 12 Tex. 7. See: Simmons v. Zimmerman Land & Irrigation Co., Tex.Civ.App., 292 S.W. 973, where the proceeding was commenced by motion; Delaune v. Beaumont Irrigation Co., Tex.Civ.App., 136 S.W. 518 where the proceeding was commenced by writ of scire facias.

There are a number of other decisions which are consistent with the decisions holding that under the circumstances scire facias is to be treated as a continuation of the original suit. Thus is it said that the object of a scire facias is to procure execution. Taylor v. Harris, 21 Tex. 438; Burge v. Broussard, Tex.Civ.App., 258 S.W. 502. And that the object of scire facias is to revive the original judgment and give it force and effect it had when rendered. Robertson v. Coates, 65 Tex. 37. The judgment in debt is quod recuperet; but in scire facias it is only that the original judgment be revived and that execution issue thereon. City of Houston v. Thomas Emery's Sons, 76 Tex. 282, 13 S.W. 264. So, it was error to render judgment for interest. Camp v. Gainer, 8 Tex. 372. And it

was error to render judgment for costs. Delaune v. Beaumont Irrigation Co., Tex. Civ.App., 136 S.W. 518. And it was error to award title. Teel v. Brown, Tex.Civ. App., 185 S.W. 319. And it was error to decree that the revived judgment was binding upon the receiver of a party to the judgment, namely, a United States bank. City National Bank v. Swink, supra. It was held that an order in scire facias reviving an original judgment barred only matters accruing prior to the original judgment and that the vendees of a party to said judgment were not necessary parties to the scire facias. Robertson v. Coates, 65 Tex. 37. Furthermore, it is said that the judgment of revivor in scire facias is not a new judgment for the debt but that the judgment rendered in an action of *debt* is a new judgment. Teel v. Brown, Tex. Civ.App., 185 S.W. 319; Bludworth v. Poole, 21 Tex.Civ.App. 551, 53 S.W. 717; so indicated: Austin v. Reynolds, 13 Tex. 544. And it is held that since scire facias was a judicial, instead of an original writ, the original judgment could not be revived against less than all of the parties originally charged; the judgment must be revived, if at all, against all of the original parties. Carson v. Moore, 23 Tex. 451; Austin v. Reynolds, 13 Tex. 544; Baxter v. Dear, 24 Tex. 17; Henderson v. Van Hook, 24 Tex. 358; Hopkins v. Howard, 12 Tex. 7; Slaughter v. Owens, 60 Tex. 668; Rowland v. Harris, Tex.Civ.App., 34 S.W. 295; City National Bank v. Swink, Tex.Civ.App., 49 S.W. 130. But, as has been stated, when the party charged in the judgment is alive, his vendees are not necessary parties to the scire facias. Robertson v. Coates, 65 Tex. 37.

In contrast, it appears from these decisions that *debt* on a judgment can be maintained against less than all of the parties originally charged in the judgment.

▮ Which of these two aspects of the scire facias proceeding before us is to be adopted, that is, whether that proceeding is to be treated as an independent suit or not, evidently depends upon the object accomplished by the proceeding. As we have pointed out, no additional liability was imposed upon Mrs. Sias. The dormant judg-

ment, although unenforcible by execution, was a subsisting debt, enforcible by action thereon. Further, as regards the other defendant to the scire facias, namely, Mrs. Sias' husband, no personal liability was fixed upon him and no adjudication was made fixing any liability upon any property which he owned or in which he had any interest, or fixing any liability upon any assumed marital community estate in which he would have an interest. Still further, the only property out of which defendant Berly attempted to collect the revived judgment was the separate estate of the person charged in that judgment, namely, Mrs. Sias (Eastham). The only object accomplished by the scire facias proceeding was the reactivization of a suspended power to issue writs of execution to collect the revived judgment; and on the facts before us we think the proceeding, so far as jurisdiction is concerned, is to be classed, not as an independent suit, but as a continuation of the original proceeding, supported by the jurisdiction which the original trial court acquired in the orginal suit.

This conclusion accords with decisions in other courts. See: Collin County National Bank v. Hughes, 10 Cir., 155 F. 389; Bank of Edwardsville v. Rafaelle, 381 Ill. 486, 45 N.E.2d 651, 144 A.L.R. 401; Shefts v. Oklahoma Co., 192 Okl. 483, 137 P.2d 589; Duffy v. Hartsock, 187 Va. 406, 46 S.E.2d 570, p. 574 (Hn. 3); 34 C.J. § 1038, p. 675; 49 C.J.S., Judgments, § 548, p. 1005; 144 A.L.R. 403; 94 Am.Dec. 222; 122 A.S.R. 69.

(6) Plaintiffs say that the judgment or order of revivor rendered on November 7, 1938 pursuant to Berly's application was void because rendered in behalf of one over whom the court did not have jurisdiction, namely, Ogden Johnson, the Receiver, in whose behalf the original judgment was rendered. This contention is overruled. It is founded upon recitals in the preliminary part of the order which refer to Berly's motion and to the parties to the original judgment in such a way that the motion appears to have been made by the Receiver instead of by Berly. However, this order also refers to the writ of scire

facias which was served upon the plaintiffs; and when this writ is read, and then, the balance of the scire facias proceedings, as then becomes necessary, it is evident that the order of revivor was made at the instance of defendant Berly, and for his benefit. We note that a somewhat similar proceeding was upheld in Bludworth v. Poole, 21 Tex.Civ.App. 551, 53 S.W. 717. Concerning the use of the record to explain and amplify provisions of the judgment, see: Cook v. Crawford, 10 Tex. 71; Dunlap v. Southerlin, 63 Tex. 38; Bendy v. W. T. Carter & Bro., Tex.Com.App., 14 S. W.2d 813; Campbell v. Schrock, Tex.Com. App., 50 S.W.2d 788; Croom v. Winston, 18 Tex.Civ.App. 1, 43 S.W. 1072; Greene v. Elerding, Tex.Civ.App., 291 S.W. 271.

The trial court's judgment clearly expresses an intention to revive the original judgment against the person who is bound by said original judgment and, when read with the complete scire facias proceedings is to be interpreted as expressing an intention to make this revival effective against both of the plaintiffs.

■ (7) On page 37 et seq. of their brief, in their arguments under Points 6, 7 and 8, and on page 47 et seq., in their arguments under Points 9 and 10, plaintiffs say that the writ of execution was defective in certain respects. All of these contentions are overruled except this, namely, that the writ of execution did not refer to the revivor proceedings and for that reason, tended to prevent a fair sale because prospective purchasers would think it issued under a dormant judgment; that the price paid for the property by defendant was inadequate; and that consequently the sale under the writ to defendant should have been set aside. We sustain this argument and on this ground reverse the judgment of the trial court.

The writ of execution is dated April 10, 1939, purports to be issued under the original judgment, and states the date of that judgment, to wit, June 13, 1932. It was, in fact, the first execution issued in the cause, and it is in the form of an original execution. It neither mentions the revivor proceedings nor suggests that such proceed-

ings had occurred. Upon reading this exeution one would infer that the writ had issued upon a dormant judgment.

■ The writ should have mentioned and described the order of revivor. The writ was issued, and the sale thereunder was held, prior to the effective date of the present Rules of Civil Procedure, and the form of the writ was prescribed by Article 3783, R.S.1925. That statute provided that the writ should "correctly describe the judgment" under which it was issued. We construe "judgment" as including not only the original judgment which the writ enforced but also the order of revivor which authorized the writ to be issued. The original judgment did not support the writ. The validity of the writ of execution depended upon both judgment and order, and for that reason should have mentioned and described both. There is some authority for this conclusion. See: Freeman on Executions, 3rd Edition, Sec. 94. In Irvin v. Ferguson, 83 Tex. 491 at pages 496–497, 18 S.W. 820, the court said that in a cause in which a trial court's judgment for money had been affirmed by the Supreme Court, the execution should be issued upon the Supreme Court's judgment but should mention the trial court's judgment and the appeal therefrom to the Supreme Court. In Taylor v. Doom, 43 Tex.Civ.App. 59, 95 S.W. 4 at page 6, after stating that the order of revivor was not a new judgment but had, instead, only the effect of reviving the original judgment, said: "When the judgment has been revived the execution should perhaps show its authority from both the original judgment and the one of revivor, yet if the execution is issued on the judgment of revivor it is an irregularity that would not affect the title of a purchase thereunder." This holding that the order of revivor is enough to support the writ necessarily implies that it should have been mentioned in the writ. In Driscoll v. Morris, 2 Tex. Civ.App. 603, 21 S.W. 629 the failure to recite in the writ that the writ was an alias, as required by the 7th Section of Article 2281, R.S.1879, recently Art. 3783, R.S. 1925, was one of the irregularities on which, coupled with inadequacy of price,

depended a judgment setting aside a sale under the writ. This judgment was affirmed.

The failure to mention the revivor of the original judgment in the writ of execution was only an irregularity and did not make the writ void; but as a consequence of this omission, a prospective purchaser would normally infer, upon reading the writ, that the writ had issued upon a dormant judgment, and if he had examined the judgment and the execution docket this inference would have been strengthened because the date of the judgment was correctly stated in the writ and the writ was, in fact, the first execution issued. There was nothing to put a prospective purchaser upon notice that revivor proceedings had occurred; and we hold accordingly that this particular irregularity tended so directly to produce an inadequate sale price that such a price would be attributed to this irregularity as a matter of law unless the evidence showed that it did not cause the inadequate price. Thus, in Irvin v. Ferguson, 83 Tex. 491 at page 495, 18 S. W. 820, at page 821, the court said: "The execution in question, while on its face not irregular as to time of issuance, showed that the return-day had long passed when the sale was made; and if we look to the indorsement of date when the writ issued, that, in connection with the face of the writ, would show that it was the first writ issued, and that more than a year had elapsed after the judgment was rendered, before that was done. There were such irregularities in the process as would affect such a sale, and tend to deter prudent men from bidding for the property who, otherwise might have desired to purchase it, and be willing to pay a fair price for it." And see: White v. Taylor, 46 Tex.Civ.App. 471, 102 S.W. 747, at page 749; Kennedy v. Walker, Tex.Civ.App., 138 S.W. 1115, at page 1116 (Hn. 3); Gregg v. First National Bank, Tex.Com.App., 26 S.W.2d 179, at page 181 (Hn. 9).

■ According to these decisions, the trial court should have set aside the sale under the writ if the price paid by defendant Berly was inadequate, because there was no proof to rebut the inference that

the failure to mention the revivor order in the writ did cause the inadequate price. The facts respecting the price paid and the manner of payment are stated in the trial court's findings, as follows: "The actual market value" of the land on June 6, 1939, the date of the execution sale, was $3,500. Taxes then chargeable against the property amounted to "approximately $750" and there was of record a judgment against the plaintiff Mrs. Sias for $32, with interest from 1932. The amount of interest is not stated, and since it must have been only a small sum we shall disregard it. These debts reduce the value of the property to $2,718. Another judgment, for $591.25 was also of record against Mrs. Sias. It had been discharged, but we shall disregard this fact, although we are not to be understood as holding that it should be so considered. Deduction of the amount of this judgment leaves remaining a net value of $2,126.75. For property worth this sum the defendant Berly paid $382.96, of which $346.01 was, in effect, credited upon the original judgment against Mrs. Sias. If we disregard his manner of payment, the price paid was a little less than one-sixth of the lowest possible net value to be given the property bought, and we hold that this price was inadequate as a matter of law. See: Snouffer v. Heisig, 62 Tex.Civ.App. 81, 130 S.W. 912; White v. Taylor, 46 Tex.Civ.App. 471, 102 S.W. 747.

We attach no significance, on the record now before us, to the plaintiffs' absence from the sale and none to their failure to act prior to the sale. Mrs. Sias was entitled to have process issued in accordance with law.

Defendant says that the Points of Error filed by plaintiffs do not raise the question, whether the revivor proceedings should have been mentioned in the writ. The generality of plaintiffs' Points of Error invites this argument but we have finally concluded that the contention should be overruled. In Fambrough v. Wagley, 140 Tex. 577, at page 586, 169 S.W.2d 478 at page 482, the court said: "Simply stated, the court will pass on both the sufficiency and the merits of the 'point' in the light of the statement and argument thereunder." In Airline Motor Coaches, Inc. v. Caver, 148 Tex. 521, 226 S.W.2d 830, at page 832, the court, in discussing a contention similar to that of defendants, said: "The argument is largely technical in that the alleged omission plainly did not interfere with a fair, complete or orderly development or consideration of the case from the standpoint of either the parties or the courts". This statement is applicable here, and especially so because the suit was tried before the court sitting without a jury. The trial court's conclusions show that informalities in the writ were considered and were held to be immaterial; and since the plaintiffs' argument clearly shows that the plaintiffs are asserting as a ground of their appeal that the sale to defendant should have been set aside for the reasons heretofore stated, we will construe the Points of Error with the arguments and will therefore refer plaintiffs' argument on page 37 et seq. of their brief, concerning the failure to mention the revivor proceedings in the writ of execution, to the last eleven words of Point 6, and will refer the repetition of this argument on page 47 et seq. of their brief to Point 10. We will, for the same reasons, construe the points as attacking the sufficiency of the evidence to support the relevant findings and conclusions. This accords with the two decisions just cited and with the action of the Courts of Civil Appeals in the following decisions: Insurance Inv. Corp. v. Hargrove, Tex.Civ.App., 179 S.W.2d 383, at pages 384, 385 (Hn. 1–3); Feldman v. Bevil, Tex.Civ.App., 190 S.W. 2d 157, at pages 159 and 160 (Hn. 3, 4); Whitten v. Dethloff, 214 S.W.2d 480, at pages 482 and 483 (Hn. 3, 4); Foster v. Buchele, Tex.Civ.App., 213 S.W.2d 738, at page 744 (Hn. 13).

The judgment of the trial court is reversed. Defendant has the right to prove, if he can, that the failure to mention the revivor proceedings in the writ of execution did not cause the inadequate price which he paid for the property. See Snouffer v. Heisig, 62 Tex.Civ.App. 81, 130 S.W. 912. Therefore the cause is remanded to the trial court.

On Motions for Rehearing.

Both plaintiffs and defendant have filed motions for rehearing.

Defendant's motion contains the following grounds, all of which are overruled for the reasons hereinafter stated.

(1) Defendant says that Article 3783, R. S.1925, only required that the writ describe the "judgment," and that the "judgment" to be described was the one mentioned in and enforced by the writ, namely, the original judgment for money, rendered against Mrs. Eastham. We think that "judgment" can be, and ought to be construed as referring to the foundation of the writ of execution. The judgment for debt was only a part of the foundation of the writ. It did not authorize the issuance of the writ; without the order of revivor the writ would not have been valid, and thus this order was a part of the foundation of the writ.

(2) Defendant says that the bill of costs attached to the writ lists items charged for the proceedings in scire facias and thus, in effect, informed prospective purchasers that the original judgment had been revived. This argument implies that a prospective purchaser either should have been expected to read the bill of costs or that he was as much bound to read the bill of costs as to read the face of the writ, and that he was bound to pursue inquiries suggested by the items in the bill. The effect of the argument is that statements in the body of the bill of costs describing the items charged would obviate defects on the face of the writ.

This argument was not considered by us on the original hearing. We did not read the bill of costs which was attached to the writ of execution. This bill is in the statement of facts and among the items of clerk's costs were the following:

"Writ of Scire Facias $ 1.00
Order Reviving Judg. .50
Total Clerk's Costs 4.05"

Among the items of Sheriff's costs listed were these:

"Writ of Scire Facias
and —— miles 6.50
Total Sheriff's Costs 7.95"

*Miscellaneous fees* were also charged and at the foot of the bill was the following:
"Grand Total Costs $15.00"

The writ on its face commanded the sheriff to collect the sum of $15 in costs.

The original judgment against Mrs. Eastham was for the principal sum of $244.54, with 6% interest thereon from the date of judgment "together with all costs of this suit."

It seems to us that with this judgment and this writ before him the prospective purchaser could not have been expected to turn to the bill, and thus could not have been expected to obtain from the bill information which (under our holding that the revivor proceedings should have been mentioned in the writ) he had a right to expect on the face of the writ.

■ We hold, further, that the statements in the bill of costs which we have quoted were not a compliance with the requirement of Article 3783, R.S.1925, that the writ describe the "judgment;" and that since this statute provided that the description of the "judgment" appear on the face of the writ, a prospective purchaser was not absolutely bound to read the bill of costs to get this information.

Irvin v. Ferguson, 83 Tex. 491, 18 S.W. 820, does not hold to the contrary of any of these propositions but, as we construe the opinion, supports our conclusions. In that case, the total costs charged in the writ exceeded the costs in the trial court under the judgment on which the writ issued, but the bill of costs attached to the writ showed that $76 was charged for the costs on appeal. The court said that the excessive total charge made for costs raised a doubt concerning the identity of the judgment under which the writ had issued. This doubt would not have arisen if defendant has correctly construed the opinion; the bill of costs would have explained this doubt and the court would not have said that the doubt existed. The court must have thought the purchaser was not bound to, and was not to be expected to read the bill of costs to resolve this doubt. The court also said that if the time of issuance

which was endorsed on the writ were considered, instead of an incorrect date written at the foot of the writ, the judgment mentioned in the writ appeared to be dormant. But if a purchaser had read the bill he would have seen a charge made for appellate costs and from this statement could very easily have discovered that the judgment had never become dormant. In this instance, too, the bill might have amplified and explained the doubtful writ, but the court said that the doubt existed which the bill would have resolved if followed up, and the court must therefore have thought that the purchaser was not to be charged with the information in the bill concerning the appeal. We construe the opinion as necessarily implying that a prospective purchaser did not have to read the bill of costs to get the information which would have explained the irregularities pointed out by the court; and on the facts that implication is applicable here.

(3) We adhere to our conclusion that the land in suit was sold for an inadequate price and that there is no evidence which tends to show that the failure to mention the revivor proceedings in the writ did not affect the price for which the land was sold. We note defendant Berly's statements that the property was unimproved and produced no revenue and that at the time of the sale "real estate was just almost not moving at all." Doubtless this testimony tends to prove a restricted market and thus, a difficulty in selling the particular tract which would have affected the market value of the tract. Nevertheless the trial court found that the "actual market value" of the land in suit was $3500. This finding is either inconsistent with Mr. Berly's statements or else means that in the market Mr. Berly referred to the land could have been sold for $3500.

■■■ (4) We also adhere to our construction of Points 6 and 10. We agree that our construction is a very liberal one but we think it required by the rule that the meaning of a point of error is to be determined by considering the arguments made as well as the language of the point itself. Further, a liberal construction is

proper because the plaintiffs' complaints are clearly shown by their brief, and on this appeal the points serve no function whatever except to point out matters of which the appellants complain. A literal construction of the points would amount to an insistence upon form.

■■■ (5) Defendant says that plaintiffs made no assignment attacking any finding of fact but that we have nevertheless set aside some of the findings. If we have correctly construed the points of error which we sustained, these points, read as they must be with the arguments of the plaintiffs, were inconsistent with the findings which we have set aside and are therefore to be treated as incidentally assigning error to these findings. There is no reason why the plaintiffs should have multiplied their points of error and we are not disposed to consider whether the points, thus construed, are multifarious. The cause was tried before the court without a jury; no motion for new trial was required and none was filed; and the points of error serve no function whatever on this appeal except to inform this court and the parties of what the plaintiffs are complaining. Plaintiffs' complaints have been reiterated in detail in their arguments, and the issues to be adjudicated, the issues of fact as well as the issues of law, have been clearly shown. Thus if the points of error had any function this function has been performed.

(6) Defendant says that the holding on which we reversed the trial court's judgment represents a new theory of recovery, one which plaintiffs did not plead and which they did not make in the trial court.

The irregularity which we held to be material was not mentioned in the pleadings. It was proved, that is, thrown up automatically as a question of law, by the evidence of the writ and the evidence of the proceedings in scire facias. Plaintiffs plead the writ and the defendant plead the scire facias. The irregularity was not mentioned in the statement of facts nor in the judgment. However, we have construed the trial court's findings and conclusions as adjudicating questions concern-

ing the existence and the effect of this irregularity and we adhere to that conclusion.

Finding 11 contains this statement: "thereafter a writ of execution *in due form of law* was issued * * *." The irregularity which we held to be material was a defect in the form of the writ.

Finding 21 contains this statement: "that under all the circumstances surrounding the sale * * * the price paid * * * was not inadequate." The form of the writ might be considered one of these "circumstances."

Finding 22 reads: "That the said Sheriff's sale of said property was in all respects a fair sale, and was in all respects in compliance with law and there was no act or thing done or omitted to be done which in any way discouraged or prevented other or further bids for said property besides that which was made by said Charles L. Berly." Finding 23 reads: "That there was nothing in the proceedings had with respect to the said judgment, the issuance of execution thereon and the sale of said property which would tend to discourage or prevent bidders from bidding therefor." These statements are broad enough to cover the form of the writ and its effect upon the action of prospective bidders.

The trial court also made the following conclusions of law:

"9. That there were no irregularities in connection with the sale of said property under execution or any grounds for setting aside said sale. 10. That the plaintiffs have failed to show or establish any facts entitled them to the relief sought by them in this suit. 11. That defendant, Charles L. Berly, acquired good title to said property above described, by virtue of said execution sale and Sheriff's deed and that he is entitled to recover title and possession of said Lot No. Seven (7) in Block No. Twelve (12) of the McFaddin Second Addition to the City of Beaumont, Jefferson County, Texas, from the plaintiffs herein, John M. Sias and wife, Mrs. Birdie Eastham Sias."

These findings and conclusions must be considered in determining what questions were decided by the trial court. How, then, are the quoted statements to be construed? These statements, in terms, adjudicate the questions which we considered in determining whether the order of the revivor should have been mentioned in the writ and concerning the effect of the failure to mention this order; and as we have stated, these questions were matters of law which were thrown up by the proof made in the trial court. Should the statements quoted from the findings and conclusions be limited to matters alleged in the petition? It seems to us that these statements are broader than the petition and must therefore, by reason of T.R. 67, be referred to the proof. Plaintiffs alleged the following grounds for setting aside the execution sale: (1) the judgment enforced by the writ was dormant; (2) the writ was invalid because it was not supported by a judgment against both of the plaintiffs; (3) the writ was invalid because it issued in favor of (at the insistence of?) Ogden Johnson and the said Johnson having been discharged and the receivership having terminated before the writ issued, the case was like that where the plaintiff had died before the issuance of the writ; (4) no notice of the sale was received by the plaintiff Mrs. Sias; (5) this ground seems to be connected in some way with the ground referred to above as No. 2; plaintiffs seem to say that judgment enforced did not support the writ because it was against Mrs. Eastham and the legal existence of Mrs. Eastham terminated when she married Mr. Sias; (6) no notice of sale was published; (7) notice that Mrs. Eastham's property would be sold was not notice that the separate property of Mrs. Eastham would be sold. Further, plaintiffs alleged that the price paid by the defendant was inadequate and that this inadequacy "coupled with such above set out void and irregular acts in making said sale" caused the sale to be "ineffectual to pass any right or title to said lot from the plaintiffs to the defendant— and that the same should be canceled, set aside and held for naught." If we have

correctly construed the petition, none of the grounds alleged by the plaintiffs as reasons for setting aside the sale are matters of form although perhaps it can be said that these grounds did incidentally affect the form of the writ. The findings and conclusions, nevertheless adjudicate the questions concerning form and the effect of form.

The questions raised by the argument of the defendant now under consideration must necessarily be determined by the record and the argument is overruled on our construction of the trial court's findings and conclusions.

*Plaintiffs' motion:* * * * Plaintiffs say that the cause ought not to be remanded because defendant Berly, being the owner of the judgment, was charged with notice of the defect in the writ and was, in a sense, responsible for it because he had the writ issued. And we find, in response to plaintiffs' motion for additional findings that acting through his attorney he did cause the writ to be issued. However, there is no evidence that defendant Berly or his attorney was responsible for the form of the writ, or that either actually knew of the defect. The proof shows nothing except that the writ was caused to issue and that defendant Berly bought the property at the sale under the writ. Berly's imputed knowledge of the form of the writ thus seems immaterial. The case is like Irvin v. Ferguson, 83 Tex. 491, 18 S. W. 820, where the purchaser was apparently a stranger but was chargeable with notice of irregularities in the form of the writ because these defects appeared upon the writ itself. These irregularities were material, not because of the purchaser's imputed knowledge but because the irregularities tended to cause an inadequate sales price, that is, because of the effect of the irregularities upon the interests of the debtor. Such a holding necessarily implies

that an execution purchaser has a right to prove that the inadequate sales price did not result from an irregularity like that in the writ before us; otherwise, in Irvin v. Ferguson, the court would not have referred to the effect which the irregularities and consideration had upon the sales price. On this issue, we see no reason why a judgment owner who purchases at his own execution sale should be distinguished from a stranger, except where knowledge of the existence of the irregularity is material, as it might have been, for instance, in Ward v. Duer, 70 Tex. 231, 11 S.W. 116. Knowledge of a harmless irregularity does not make the irregularity any more harmful nor does it necessarily imply fraud. None of the decisions cited by plaintiffs are thought to be in point. Pearson v. Hudson, 52 Tex. 352, is an instance of an irregularity which was materially harmful although it did not affect the sales price of the land.

Plaintiffs also say that the order of revivor was the foundation of the writ and that the failure to mention this order in the writ made the sale void because the writ did not mention the judgment which authorized its issue. However, the writ did refer to the original judgment and it was this judgment which was actually enforced by the writ of execution. The order of revivor was only a part of the foundation of the writ. We adhere to our conclusion that the failure to mention the revivor proceedings was only an irregularity which did not make the sale void and that it is material here only for the reasons stated in our original opinion.

Plaintiffs' motion is overruled.

Remand is proper because the evidence has not been fully developed.

Plaintiffs have also requested additional findings of fact. The motion is denied except to the extent of the facts found in this and in the original opinion.